ATOCHA THOM MCAN, INC., recurrente, v. EL REGISTRA-
DOR DE LA PROPIEDAD DE PONCE, recurrido.

*Número:* CE-88-299 *Resuelto:* 18 de abril de 1989

574

*Gilberto Oliver Vázquez*, de *Quilichini, Oliver, Medina & Gorbea*, abogado del recurrente; el Registrador de la Propiedad recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

█ El presente recurso gubernativo exige una incursión en la esencia y significado de las prórrogas de los contratos de arrendamiento y la interpretación del alcance de la norma *séptima* del Art. 2 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 1767b. Además, su interacción con la figura de la *opción de arrendamiento.* Dispone:

> *Séptima:* En los arrendamientos servirá de base para fijar los derechos arancelarios la cantidad que haya de ser pagada por concepto de renta o canon durante el término del contrato o el del importe de doce (12) anualidades; de entre éstos, el que resultare menor. A los fines de esta disposición, en ningún caso se tomarán en consideración las prórrogas.
>
> Cuando el contrato no establezca plazo de duración, servirá de base el importe de doce (12) anualidades. 30 L.P.R.A. sec. 1767b.

## I

Mediante contrato elevado a escritura pública —Núm. 11 de 8 de julio de 1961, ante el notario Robert S. Griggs— Atocha Thom McAn, Inc. (Atocha) arrendó un edificio en Ponce. El referido contrato, inscrito en el Registro de la Propiedad (Registro), tenía un término original de quince (15) años con tres (3) opciones de prórroga de cinco (5) años cada una. Como Atocha ejerció las opciones, su vencimiento se extendió hasta el 31 de enero de 1991.

Vigente esta tercera prórroga, debido a su interés de continuar por mucho más tiempo esa relación arrendaticia, subsiguientemente, el 21 de agosto de 1987, Atocha y el arrendador otorgaron un nuevo documento denominado por el nota-

rio Gilberto Oliver Vázquez *Deed of Confirmation of Exercise of Renewal Options, of Amendment to Lease, and Subordination of Mortgage to Lease* (traducida por el Registrador de la Propiedad como "Escritura de Confirmación del Ejercicio de Opciones de Renovación, de Enmienda de Contrato y Subordinación de Hipoteca al Contrato").

En síntesis, esta nueva escritura consignó que las tres (3) opciones de prórroga del contrato original fueron ejercidas, y solicitaba del Registrador de la Propiedad (Registrador) que así lo hiciera constar mediante la correspondiente anotación al margen de la inscripción del arrendamiento. Contenía, además —caracterizadas como una enmienda— tres (3) opciones de prórroga sucesivas por términos de cinco (5) años cada una, comenzando el 1ro de agosto de 1991.

El 4 de marzo de 1988 fue presentado el documento al Registro acompañado de la cantidad de $1,512.50, correspondientes a los derechos de inscripción. El Registrador denegó esa instancia por los fundamentos siguientes:

> Falta complementar con un comprobante de $2,520.00 para derechos de inscripción (30 LPRA Sección 1767b - séptima).
>
> En un contrato de arrendamiento original no se consideran las prórrogas en la determinación de derechos arancelarios porque no se ha ejecutado el derecho de renovación, queda en suspenso para cuando se ejerciten. Una vez ejercitado existe un nuevo contrato, en este caso por 15 años al ejercitarse tres opciones de 5 años cada uno. Se hizo la determinación por lo tanto, a base del máximo permitido por ley, 12 anualidades.
>
> De su propio escrito de recalificación acepta que hay un término original de nuevo contrato, limitándolo a 5 años, no obstante haber opcionado 15 años. Apéndice, pág. 18.

## II

Surge, pues, que el Registrador fundamentó su negativa al interpretar el contrato como uno de arrendamiento y aplicar la norma séptima del Art. 2 de la Ley Hipotecaria antes citada. A su entender, por la inscripción del contrato de

arrendamiento original en 1961, se había cobrado el máximo de derechos que faculta la ley. Sin embargo, no ocurrió lo mismo con las tres (3) opciones de prórroga —que vencerán en 1991— por no haberse ejercido o al menos solicitado su inscripción.

De acuerdo con esa tesis, el lapso comprendido entre 1976 y 1991, es decir, el término acumulado de las tres (3) prórrogas, constituyó un nuevo contrato, cuya inscripción era el verdadero objeto de la solicitud en la segunda escritura. Así configurado, para el nuevo contrato lograr acceso al Registro deberían pagarse derechos arancelarios a base del término de doce (12) años estipulado en la ley.[1]

Como corolario de esa interpretación, el Registrador sostiene que ese nuevo contrato (escritura de 1987) contiene a su vez tres (3) nuevas opciones de prórroga, las cuales —por ser opcionales y no haberse ejercido— no pueden cobrarse todavía.

Atocha objeta esa interpretación y cómputo. *Stricto jure*, argumenta que no tiene obligación alguna de pagar derechos por tales prórrogas. Sin embargo, reconociendo que su ejercicio en su día ampliaría el término del contrato original, nos dice que ha optado por acoger la interpretación —desde el punto de vista fiscal— más favorable al Estado, esto es, considerar la enmienda contractual como una "novación" del contrato original. Según esta hipótesis, a la primera prórroga le adjudicó el carácter de término original del nuevo contrato, y a base de cinco (5) años, calcularon los derechos a pagar.

Finalmente Atocha concluye que la nota denegatoria del Registrador es confusa porque aparenta decir que no está

---

[1] Originalmente el Registrador de la Propiedad (Registrador) computó a base de quince (15) años. Sin embargo, en su comparecencia ante nos admite que erró.

requiriendo derechos por el documento presentado, sino por la escritura otorgada en 1961.

## III

La solución de esta controversia exige inicialmente discutir algunos aspectos normativos y doctrinales del contrato de arrendamiento. Los Arts. 1432 y 1433 del Código Civil lo definen del modo siguiente:

El arrendamiento puede ser de cosas o de obras o servicios. 31 L.P.R.A. sec. 4011.

En el arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa por *tiempo determinado* y precio cierto. (Énfasis suplido.) 31 L.P.R.A. sec. 4012.

Estos preceptos ponen de manifiesto, como uno de los elementos esenciales del contrato de arrendamiento, el *tiempo determinado*, es decir, el requisito de limitación temporal. Ahora bien, esta temporalidad no está reñida con el derecho a prórroga. De hecho es muy común —especialmente en aquellos que tiene por objeto la explotación de un negocio— que se provea ese derecho a favor del arrendatario, quien podrá hacerlo efectivo si al vencimiento del plazo inicial o el de cada prórroga no renuncia a seguir con el arrendamiento. En términos jurídicos, la renuncia a la prórroga activa la condición resolutoria a la que se encuentra afecta la obligación.(2)

Nuestra casuística recoge este estado doctrinario. A tal efecto, en *Am[é]zaga v. Agudo*, 67 D.P.R. 6, 10–11

---

(2) Nótese que aunque la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) no les permite acceso al Registro de la Propiedad a los arrendamientos por un término menor de seis (6) años, éstos son inscribibles cuando existe un convenio de las partes —Art. 38(3ro), 30 L.P.R.A. sec. 2201— o cuando tienen un pacto de prórroga por un plazo que exceda dicho término, siempre que su ejercicio quede totalmente al arbitrio del arrendatario. Art. 48.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), 30 L.P.R.A. sec. 2003-48.1, edición especial.

(1947) —al examinar un contrato de arrendamiento con opción a prórroga similar al de autos— resolvimos que "[c]onforme prescribe el art. 1066 del Código Civil, será exigible desde luego toda obligación que contenga condición resolutoria, sin perjuicio de los efectos de la resolución. En otras palabras, contrario a lo que sucede con *la obligación* afecta a condición suspensiva, la obligación sujeta a condición resolutoria surte efecto legal desde el preciso momento en que surge el concurso de voluntades. Desde ese instante la obligación existe en su integridad como si la condición no se hubiera pactado. Por supuesto, sobre la obligación sujeta a condición resolutoria, pesa la amenaza de caducidad, si la condición llega a cumplirse; *pero si no se cumple, la obligación se consolida, es decir, no surge una nueva obligación, sino que subsiste inalterada la original.* 8 Manresa, [*Comentarios al Código Civil Español*], (4ta. ed. 1929), pág. 122". (Énfasis suplido.) Y en *Igartúa v. Ruiz*, 79 D.P.R. 481 (1956), consignamos que la prórroga de un contrato de arrendamiento, a elección del arrendatario, forma parte del contrato en cuestión.

Según este trasfondo jurídico, es obvio que en el presente caso el contrato original vislumbraba tres (3) posibles prórrogas. Optó la arrendataria por no terminarlo una vez transcurrido el término original de quince (15) años y ejerció su derecho a prorrogarlo por cinco (5) años adicionales en tres (3) ocasiones diferentes. Ante esta situación, concluimos que el contrato quedó consolidado por el término de treinta (30) años, como si así se hubiere convenido desde su incepción en 1961. En este sentido, como formaban parte del contrato original, erró el Registrador al determinar que el ejercicio de las primeras tres (3) prórrogas equivalía a una nueva obligación.

## IV

▮ Aclarado este aspecto, tampoco tiene razón el Registrador al afirmar que las prórrogas de los contratos de arrendamiento también pagan derechos arancelarios una vez se ejercen. Hemos examinado cuidadosamente el historial legislativo de la norma séptima del Art. 2 de la Ley Hipotecaria, *supra*, y no hemos encontrado fundamento en qué apoyar su posición. Veamos.

Antes de 1966 la legislación disponía que para fijar los derechos arancelarios del Registro para los arrendamientos serviría de tipo la cantidad que se hubiera de pagar en concepto de renta o canon *durante todo el tiempo del contrato*. Cuando no se fijase plazo, se computaría a base del importe de doce (12) anualidades.

La Ley Núm. 38 de 14 de junio de 1966 introdujo una enmienda para añadirle a la disposición anterior que "en ningún caso se tomarán en consideración las prórrogas". (Énfasis suplido.) 30 L.P.R.A. sec. 1767b. De acuerdo con el Informe de la Comisión de lo Judicial de la Cámara de Representantes, su propósito fue reducir los derechos a cobrarse en la inscripción de arrendamientos. Servicio Legislativo de Puerto Rico, 1966, Núm. 3, pág. 273.

Esta norma se ha mantenido inalterada. De su texto claro y de su historial legislativo concluimos que la exclusión de las prórrogas del cómputo de los derechos arancelarios no fue motivada —como sugiere el Registrador— por la incertidumbre de su verificación al momento de la inscripción del contrato. Indubitadamente el legislador quiso inyectar un trato uniforme, a la par que establecer *un tope máximo de doce (12) anualidades para la determinación de los derechos a pagar por este tipo de contrato*. De otra manera carecería de sentido que por un contrato de arrendamiento con un término de treinta 30 años, *sin prórrogas*, se utilicen doce (12) anualidades como fundamento para el cómputo de derechos, mientras que para uno de quince (15) años, *con pró-*

*rrogas* por quince (15) más, se cobren derechos por el término original y, además, por las prórrogas.

## V

Lo expuesto no dispone del recurso. Más bien nos obliga a examinar la verdadera naturaleza del contrato contenido en la escritura de 21 de agosto de 1987. Para ello es necesario reproducir sus cláusulas principales atinantes:

——CUARTO: Confirmación del Ejercicio de Opciones de Renovación y Petición de Anotación Marginal.

——El arrendador y el arrendatario por este medio declaran y confirman que el término inicial del arrendamiento concluyó el treinta y uno (31) de julio de mil novecientos setenta y seis (1976), que el arrendatario ejerció la primera, segunda y tercera renovación del término, que la última expirará el treinta y uno (31) de julio de mil novecientos noventa y uno (1991) y que las partes están cumpliendo fielmente con los deberes y obligaciones del arrendamiento.

——Las partes comparecientes respetuosamente solicitan al Honorable Registrador que haga la anotación al margen de la inscripción del arrendamiento y tome conocimiento de los hechos declarados y confirmados en este artículo cuarto.

——QUINTO: *Enmienda del Arrendamiento.* El arrendador y el arrendatario acuerdan enmendar y por este medio enmiendan el arrendamiento de la manera siguiente:

Uno: *Opción a Renovar*: El arrendador por la presente expresamente concede al arrendatario el derecho, *opción y privilegio de extender el término de este contrato por tres (3) períodos* adicionales y sucesivos cada uno de cinco (5) años, el primero *comenzará el primero (1ro) de agosto de mil novecientos noventa y uno (1991)* y expirará el treinta y uno (31) de julio de mil novecientos noventa y seis (1996) y así sucesivamente *bajo los mismos términos y condiciones de este arrendamiento y sujeto a notificación por el arrendatario al arrendador con no menos de seis (6) meses de antelación a la expiración del término corriente.* En caso de que el arrendatario elija ejercer cualquiera de dichas *opciones*, dicha notificación, si ha sido dada dentro del término aquí provisto, ope-

rará para automáticamente extender este arrendamiento por dichos términos adicionales sin acción ulterior por parte de cualquiera de las aquí comparecientes. Por el contrario, la falta del arrendatario de dar dicha notificación por escrito al arrendador dentro del término aquí dispuesto, se entenderá conclusivamente como una elección del arrendatario de *renunciar a su opción a extender el contrato.* En caso de que se ejerzan las opciones a renovar o cualquiera de ellas, la renta durante el primer período adicional de cinco (5) años será la de setenta y ocho mil dólares ($78,000.00) anuales. Durante el segundo período adicional de cinco (5) años la renta será de noventa mil dólares ($90,000.00) por año y durante el tercer y último período adicional de cinco (5) años la renta será también la de noventa mil dólares ($90,000.00) por año. (Traducción nuestra.) Apéndice, págs. 5–6.

▮▮▮▮▮▮▮ Aunque incorpora algunos de los términos del contrato original de arrendamiento, definitivamente estamos ante un nuevo acuerdo de voluntades. Esa clara intención se desprende diáfanamente del lenguaje inequívoco utilizado por las partes en cuanto a sus condiciones principales. Art. 1158 del Código Civil, 31 L.P.R.A. sec. 3242;[3] *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64 (1983); *Miranda Soto v. Mena Eró,* 109 D.P.R. 473 (1980); *G. & J., Inc. v. Doré Rice Mill, Inc.,* 108 D.P.R. 89 (1978); *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378 (1973). Desde un prisma rigurosamente científico, es norma reconocida que los cambios en la duración del término de un contrato implican su novación. Art. 1157 del Código Civil, 31 L.P.R.A. sec. 3241;[4] *Miranda Soto v. Mena Eró,* supra. Así, temprano en nuestra jurisprudencia dijimos que la extensión de un contrato de

[3] Dispone:

"Para que una obligación quede extinguida por otra que la sustituya, es preciso que *así se declare terminantemente,* o que la antigua y la nueva sean de todo punto incompatibles." (Énfasis suplido.) 31 L.P.R.A. sec. 3242.

[4] "Las obligaciones pueden modificarse: (1) Variando su objeto o *sus condiciones principales.* (2) Sustituyendo la persona del deudor. (3) Subrogando a un tercero en los derechos del acreedor." (Énfasis suplido.) 31 L.P.R.A. sec. 3241.

arrendamiento mediante escritura no puede estimarse como una continuación del original. *Nieva v. Guánica Centrale*, 27 D.P.R. 555 (1919); *Smith v. El Registrador*, 18 D.P.R. 169 (1912).

 Ahora bien, contrario a lo afirmado por Atocha y el propio Registrador, la calificación verdadera de este negocio es la de *contrato de opción de arrendamiento*.(5) Al hacerlo, reiteramos la sana práctica de calificar objetivamente a base de las obligaciones contraídas según el texto documental y no del título dado por las partes. *Caballero v. Kogan*, 73 D.P.R. 666 (1952). "Así, pues, la calificación jurídica se realiza no a base de los nombres dados . . . ni tampoco por la voluntad de los sujetos, de encuadrar al negocio celebrado dentro de una u otra categoría, sino porque realmente lo que la interpretación fija como querido caiga objetivamente dentro del marco que la ley traza de lo que sea éste o aquél negocio, o ésta o aquélla clase de negocios." M. Albaladejo, *Curso de Derecho Civil Español*, 3ra ed., Barcelona, Ed. Bosch, 1983, T. I, pág. 490. Concentrémonos en este aspecto.

 Nuestra jurisprudencia adopta la postura de Castán definitoria del contrato de opción como el "'convenio por el cual una parte [llamada concedente, promitente u optatario] concede a la otra [llamada optante], por tiempo fijo y en determinadas condiciones, la facultad, *que se deja exclusivamente a su arbitrio*, de decidir respecto a la celebración de un contrato principal'". (Énfasis en el original.)(6) Véanse:

---

(5) "[E]l contrato de opción puede también ser preparatorio de uno de arrendamiento de cosas. Así lo afirma MEZQUITA, distinguiéndolo del arrendamiento con opción de compra . . .". J.A. Torres Lana, *Contrato y Derecho de Opción*, 2da ed., Madrid, Ed. Trivium, 1987, pág. 98.

(6) Esta doctrina ha sido criticada por algunos sectores de la comunidad jurídica puertorriqueña. En este caso, sin embargo, no nos vemos precisados a pasar juicio sobre la validez de tales planteamientos.

*Rosa Valentín v. Vázquez Lozada*, 103 D.P.R. 796, 806 (1975); *Del Toro v. Blasini*, 96 D.P.R. 676, 681 (1968).

El contrato de opción, de "naturaleza . . . movediza y transitoria"[7] puede ser principal o un pacto accesorio de otro. Su alumbramiento histórico respondió a las exigencias de la vida moderna y a la necesidad de hacer viables los negocios. "Nacido en la práctica . . . como prolegómeno únicamente del contrato de compraventa, aunque aceptado hoy por nuestra Legislación y por la doctrina, como posible antesala de toda clase de contratos." E.R. Núñez y Núñez, *Contrato de Opción*, La Habana, Ed. Cultural, 1940, pág. 26.[8]

---

[7] R. Infiesta, *El contrato de opción en la legislación cubana*, La Habana, Imprenta Berea, 1938, pág. 13.

[8] Sobre este aspecto parece haber unanimidad de criterios en la doctrina. A manera de ejemplo, reproducimos las manifestaciones siguientes: "[L]a opción es aplicable a una *extensa pluralidad de relaciones jurídicas.* No obstante, es patente que las aplicaciones prácticas casi unánimes de esta figura vienen centradas en la denominada opción de compra y es a ella a donde se reconducen la casi totalidad de los litigios, de las producciones jurisprudenciales y de los análisis doctrinales, así como en la misma se subsume la íntegra problemática que encierra la opción", C. Mascareñas, *Nueva Enciclopedia Jurídica*, Barcelona, Ed. Francisco Seix, 1986, T. XVIII, pág. 448; "[L]a ley no establece claramente supuestos de derechos de opción (lo que no impide que *puedan admitirse algunos)*", Albaladejo, citado por E. Serrano Alonso, *Notas sobre el derecho de opción*, pág. 1.136; "Escribe ROCA SASTRE en relación con el derecho de opción de compra que se trata de 'un dispositivo jurídico de añejo origen y desenvolvimiento moderno, debido a que en estos tiempos goza el mismo de considerable predicamento. Ha prestado y presta relevantes servicios el tráfico jurídico'. Estas palabras referidas a una de las posibles modalidades del derecho de opción son aplicables al derecho de opción, en general, el cual viene cada día siendo más utilizado en el tráfico jurídico aunque no siempre con finalidades totalmente conformes a derecho", Serrano Alonso, *op. cit.*, pág. 1.137; "La identificación entre promesa de contrato y contrato de opción surge de la consideración de la opción en relación con una de sus posibles formas, cual es la opción de compra, pero nada impide que el derecho de opción nazca en relación con otros tipos de relaciones contractuales: censo, sociedad, hipoteca, préstamo con intereses, etc.", Serrano Alonso, *op. cit.*, pág. 1.139; "'A veces, resume Gayoso, una persona natural o social adquiere la facultad de comprar, *arrendar* o exigir la aportación de una cosa o derecho (minas, fábricas, saltos de agua, joyas, valores bursátiles, acciones u obligaciones, usufructos, concesiones del Estado, etc.); otras, la de tratar su compra, arriendo o aportación, en términos que el dueño deba otorgárselos a él o a quien

Si bien no está regulado de forma expresa en nuestro Código Civil, lo encontramos en la Ley Hipotecaria y en nuestro aservo jurisprudencial, claro está, en su modalidad más común: la opción a compra.

Según la forma multidimensional de la figura de opción, el examen de las cláusulas del contrato de autos refleja que aunque en su título y texto se utilizó el vocablo "prórrogas" la intención de las partes no fue prorrogar el *primer* contrato más allá del término final pactado en 1991. Sólo convinieron en concederle al inquilino Atocha el derecho a *optar* por la continuación del arrendamiento —con nuevas condiciones de precio y plazo— seis (6) meses *antes* del vencimiento del término en 1991.

█ La diferencia estriba en que mientras en el contrato de prórrogas su continuación es un hecho cierto —pues ya hay acuerdos de voluntades— en el de opción el arrendamiento está sujeto a una condición incierta: el ejercicio del derecho por parte del optante. En puridad jurídica no puede, pues, hablarse de un contrato de prórrogas de arrendamiento si existe incertidumbre sobre su existencia.

## VI

Esclarecida su naturaleza, ¿es inscribible en el Registro el derecho de opción de arrendamiento? Sobre la inscribibilidad de una modalidad de opción distinta a la opción de compra, Ángel Torres Lana, al estudiar el Art. 14 del Reglamento Hipotecario español —similar al nuestro— señala:

. . . El art. 14 del Reglamento hipotecario sólo autoriza expresamente la inscripción del contrato de opción de compra. Este dato, enlazado de nuevo con la discusión sobre el carác-

---

él designe en las condiciones fijadas, o bien admitir un préstamo gestionado por el titular de la opción, para explotarlas'", J. González, *La memoria de este año, el llamado derecho de opción*, 8 Rev. Crít. Der. Inmob. 188, 193 (1932).

ter real o personal del derecho de opción, abre, a su vez, dos posibilidades.

La primera parte de la consideración del derecho de optar como real o personal, en función de la voluntad de las partes. En esta línea, dice ROCA SASTRE que el artículo 14 lo que autoriza es precisamente la inscripción del derecho personal de opción de compra; pero, cuando tal derecho se configura con carácter real, su acceso al Registro ya no se produce a través de este art. 14, sino siguiendo las normas generales de la inscripción, es decir, el art. 2 de la Ley y sus concordantes. Este [sic] tesis sugiere la viabilidad de la inscripción de manifestaciones de la opción distintas de la de compra, siempre que cumpliesen los requisitos generales legalmente exigidos.

Sin embargo, ya hemos visto cómo el derecho de opción debe ser considerado de naturaleza personal. *De ahí que se haya dicho con razón que su acceso al Registro se permite con carácter excepcional, al igual que ocurre en el caso del arrendamiento.* La hipótesis varía entonces sustancialmente, porque la excepcionalidad obliga a una *interpretación restrictiva.* Por ello hay que entender, con LACRUZ y SANCHO, que los derechos personales sólo tienen acceso al Registro cuando la ley lo concede para una especie concreta. *Y en nuestro caso está claro que la ley —es decir, el Reglamento hipotecario— solamente autoriza la inscripción de la opción de compra.* (Citas omitidas y énfasis suplido.) J.A. Torres Lana, *Contrato y Derecho de Opción*, 2da ed., Madrid, Ed. Trivium, 1987, págs. 210–211.

 A esta última corriente se adscribe el Prof. Michel J. Godreau, cuando en su análisis del Art. 38(4to) de la Ley Hipotecaria, 30 L.P.R.A. sec. 2201(4to), señala que: "no es todo tipo de pacto de opción el que tiene acceso al registro, *sino únicamente la opción a compra.* Quedarían *excluidos,* pues *los pactos de opción de arrendamiento* o de opción para la adquisición de cualquier otro derecho real, pues se entiende que la opción, por ser un derecho personal, logra acceso al Registro por vía de excepción y únicamente porque el legislador ha designado este tipo de negocio, el de compra, como el merecedor de la protección registral." (Énfasis

nuestro.) M.J. Godreau, *La opción de compra en Puerto Rico*, LIII Rev. Jur. U.P.R. 565, 594 (1984).

█ Acogemos esta apreciación. El Art. 38(4to) de la Ley Hipotecaria, *supra*, y otras disposiciones reglamentarias[9] aluden exclusivamente a contratos o pactos de opción a compra. Al hacerlo no pasamos por alto otras secciones de la Ley Hipotecaria y del Reglamento Hipotecario en que el legislador utilizó una preceptiva legal amplia, sugerible —en teoría— de que otros contratos o pactos de opción pueden lograr acceso al Registro.[10]

Esa postura respondería a la interpretación de que cuando el legislador se refirió al contrato de opción de compra lo hizo de manera clara y expresa, mientras que en disposiciones anteriores utilizó un concepto genérico. De hecho, Torres Lana examina, como fórmula adicional que permitiría la inscripción de otras variantes del derecho de opción, lo siguiente:

> Cierto es que otras formas de opción son altamente infrecuentes y que pueden aducirse muy serias razones a favor de la inscripción sólo de la opción adquisitiva inmobiliaria. Pero acaso conviniera tener en cuenta el amplio margen de libertad de que la opción dispone en el ámbito sustantivo y trasvarsarlo [sic] al campo inmobiliario registral. El resultado del trasvase sería una fórmula más amplia, coordinada con la que

---

[9] 30 L.P.R.A. sec. 2003–130.1, edición especial (procedimiento para la cancelación de la inscripción); 30 L.P.R.A. sec. 2003–99.4, edición especial (cuando no es inscribible); 30 L.P.R.A. sec. 2003–40.1, edición especial (efectos de su inscripción); 30 L.P.R.A. sec. 2003–49.2, edición especial (transmisión del derecho).

[10] Ejemplo de esto lo vemos en el Art. 103 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2353:

"La opción inscrita tendrá la condición de riguroso gravamen conforme a las disposiciones de este Subtítulo y perjudicará de acuerdo con sus términos a los subsiguientes adquirentes del bien sujeto a la misma."

Así también en el Art. 40.1 del Reglamento Hipotecario:

"Inscrito el contrato de opción, o el contrato de tanteo, todo comprador posterior de la finca o derecho, quedará obligado de acuerdo a los términos del contrato inscrito." 30 L.P.R.A. sec. 2003–40.1, edición especial.

contienen los números 1 y 2 del art. 2 de la Ley hipotecaria. Esto no prejuzga ni resuelve la naturaleza del derecho de opción, porque la inscripción vendría determinada por el carácter real de la figura constituida por el segundo título, como consecuencia del ejercicio de la opción. Una fórmula como la que se propugna resultaría más apta para instrumentar en su vertiente registral la eficacia de la amplia gama de facetas que la opción puede presentar —y presenta de hecho— en el tráfico jurídico sustantivo. Torres Lana, *op. cit.*, pág. 211.

La dificultad de este enfoque es que nuestro legislador no lo vislumbró. La entrada al Registro de los contratos de arrendamiento respondió a la realidad económico-social del país de que es uno de los negocios jurídicos de mayor y trascendental importancia. M.J. Godreau, *Conceptos básicos de derecho civil patrimonial*, Escuela de Derecho U.P.R., agosto de 1984, mimeografiado, págs. 10–12. Por esa razón se permitió su ingreso, aun sin ser un derecho real, y que adquiriera eficacia *erga omnes* a partir de su inscripción. Aunque reconocemos que la admisión al Registro de la *opción* de arrendamiento estaría en consonancia con una mayor protección a los arrendamientos —y el criterio de *numerus apertus* que rige nuestro sistema registral— sin embargo, ello es una determinación que corresponde a la Asamblea Legislativa. En ausencia de un precepto claro en esa dirección, concluimos que el derecho de opción de arrendamiento no es inscribible.

A tono con lo expuesto, por distintos fundamentos, *se dictará sentencia que confirme la negativa del Registrador a inscribir el contrato de opción de arrendamiento.*

Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurren con el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez no intervino.