EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| P.D.C.M. Associates, S.E.<br><br>Peticionaria<br><br>v.<br><br>Elías Najul Baez, et al.<br><br>Recurridos | Certiorari<br><br>2008 TSPR 133<br><br>174 DPR \_\_\_\_ |

Número del Caso: CC-2007-93

Fecha: 7 de agosto de 2008

Tribunal de Apelaciones:

       Región Judicial de Aguadilla

Juez Ponente:

       Hon. Nydia M. Cotto Vives

Abogado de la Parte Peticionaria:

       Lcdo. Rodolfo Gluck

Abogados de la Parte Recurrida:

       Lcdo. Roberto Cardona Ubiñas
       Lcdo. Reinaldo Franqui Carlo

Materia: Injuction

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

P.D.C.M. Associates,S.E.

    Peticionaria

       v.                            CC-2007-93

Elías Najul Bez, *et al*.

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de agosto de 2008

La parte peticionaria nos solicita resolver que en el presente caso ocurrió una novación modificativa de los términos de un contrato de opción de compraventa. Aduce que al aceptar ciertos pagos tardíos en concepto de las prórrogas pactadas en el contrato de opción, los aquí recurridos prestaron su consentimiento tácito para modificar las condiciones del contrato que sujetaban el ejercicio de las prórrogas a un requisito de notificación previa dentro del término pactado y a que la Junta de Planificación no aprobara el proyecto que se proponía desarrollar en el inmueble en controversia. Los tribunales aquí recurridos rechazaron la teoría de

novación y decretaron la resolución del contrato de opción. Por entender que al aceptar los pagos para ejercer las prórrogas contenidas en el contrato de opción, los recurridos modificaron los términos de dicho acuerdo a los fines de liberar a la peticionaria de cumplir con las condiciones pactadas, revocamos la sentencia apelada y ordenamos se cumpla con las disposiciones del contrato de opción.

## I

Los demandados en el caso de epígrafe, el Ingeniero Roland Cordero Peña (Ingeniero Cordero), el Doctor Elías Najul Bez (señor Najul Bez), sus hijos, María de los Ángeles, José Elías, Luisa Priscilla, Neyda Rosa, Zahira Ivelisse y Yazmín Elizabeth Najul Zambrana y la señora Marta Romero López (esposa del señor Najul Bez) son dueños en común *pro indiviso* de una finca sita en el Municipio de Isabela.

En el año 1999, los demandados-recurridos otorgaron un Acuerdo sobre opción de venta con P.D.C.M., Associates, S.E. (Associates). El acuerdo, con fecha del 18 de marzo de 1999, refleja que los demandados-recurridos comparecieron como vendedores de la propiedad localizada en el Municipio de Isabela. Según los términos del referido contrato de opción de compraventa, el precio de venta de la finca sería $195,000.00 y Associates prestaría $19,500.00 por concepto de la opción. El término de la opción sería de 180 días. Durante los primeros 90 días de la opción,

Associates tendría derecho a retirarse del acuerdo sin penalidad alguna. Ello, si surgía algún impedimento en obtener los permisos gubernamentales del proyecto que Associates proponía desarrollar, si la finca resultaba ser propicia a inundaciones o si el costo del relleno resultaba muy oneroso. Pasados estos 90 días, pero antes de los 180 días, Associates podía retirarse con una penalidad de $9,750.00.

Por otra parte, Associates tendría derecho a **ejercer una extensión de 180 días del término de la opción, sujeto al pago de un depósito adicional de $9,750.00. Tanscurrido dicho período de 180 días, Associates podía obtener una nueva extensión de 90 días, previo el pago de $9, 750.00 adicionales.** Associates debía solicitar toda extensión al período original por escrito, 20 días antes de extinguirse el plazo que estuviese corriendo en el momento. De no realizarse la compraventa dentro del último período adicional, los demandados-recurridos se adjudicarían todo el dinero depositado.

Finalmente, las partes estipularon que las extensiones al período original de opción se concederían si a la fecha de éstas solicitarse, la Junta de Planificación no había aprobado la consulta del proyecto que Associates pretendía realizar. Una vez la Junta de Planificación aprobara la consulta, Associates tendría 30 días calendario para formalizar la compraventa.

El contrato antes reseñado se formalizó el 18 de marzo de 1999. Por tanto, el primer término de la opción vencía el 14 de septiembre de 1999. De solicitar la primera extensión de 180 días, el contrato estaría vigente hasta el 12 de marzo de 2000 y de ejercer la segunda extensión, el contrato estaría vigente hasta el 10 de junio de 2000.

El 18 de marzo de 1999, Associates hizo un primer pago de $19,500.00 por concepto del depósito de la opción. El referido pago se hizo mediante cheque de P.D.C.M. Associates S.E., girado a nombre de cada uno de los demandados-recurridos, quienes lo endosaron. El cheque se depositó en el banco.

El 12 de noviembre de 1999, vencido el primer término de la opción, Associates realizó un segundo pago mediante cheque por la cantidad de $9,750.00. El pago se hizo a nombre de cada uno de los demandados-recurridos y se hizo constar que el mismo pretendía cumplir con la extensión de la opción de compraventa. Todos los demandados-recurridos endosaron el cheque que también se depositó en el banco.

El 18 de marzo de 2000, luego de que el Ingeniero Cordero le informara al señor Israel Kopel, dueño y representante de Associates, que el tiempo de la opción había expirado, el señor Kopel giró un cheque personal por la cantidad de $9,750.00. Hizo constar que el cheque era en concepto del ejercicio de la segunda extensión. Sin embargo, a diferencia de los primeros dos cheques, éste se giró a nombre del señor Elías Najul Bez, su esposa, la

señor Marta Romero López y del Ingeniero Cordero Peña. Éstos endosaron el cheque.

No está en controversia que, previo al envío de los cheques por concepto del ejercicio de las extensiones de la opción, Associates no sometió una consulta de ubicación ante la Junta de Planificación. Tampoco envió una notificación escrita a los demandados-recurridos manifestando su intención de extender el término de la opción.

Durante el mes de junio de 2000, el señor Israel Kopel intercambió comunicaciones escritas con el Ingeniero Rolando Cordero para tramitar la compraventa. Para ello, el licenciado Ramón Banuchi Eurite redactó un borrador de escritura de compraventa. Sin embargo, la compraventa no se firmó. Surge de las admisiones de las partes en sus escritos, que una de las demandadas, la señora María de los Ángeles Najul, se opuso a realizar el negocio.

Ante la imposibilidad de perfeccionar la compraventa, Associates presentó demanda sobre *injunction* por incumplimiento de contrato en contra del Grupo Najul. En esencia, alegó que ejerció oportunamente su derecho de opción dentro del término de la primera opción y que no se otorgó la escritura de compraventa pues la señora María de los Ángeles Najul Zambrana se negó. Solicitó el cumplimiento específico del contrato de opción, es decir, que los demandados otorgaran la escritura de compraventa y

transfirieran el dominio de la finca. Además, reclamó una partida de daños.

Luego de celebrar el juicio en su fondo, los demandantes-peticionarios reconocieron que no existía prueba de daños, por lo que circunscribieron la controversia al aspecto de la novación de los términos del contrato de opción. Así las cosas, el Tribunal de Primera Instancia declaró no ha lugar la demanda. Determinó que no se configuró una novación en las condiciones del contrato de opción, pues no hubo prueba de que los demandados Najul Zambrana consintieran a ella. A la luz de ello, decretó la disolución del contrato de opción y determinó que los demandados debían devolver el dinero pagado por Associates y por el señor Kopel.

Inconforme, Associates acudió al Tribunal de Apelaciones. Dicho foro apelativo intermedio confirmó la sentencia apelada. En primer lugar, el tribunal entendió que en el presente caso no hubo novación, pues aun cuando el señor Najul Bez recibió los cheques de los demandantes-peticionarios, no existía prueba de que sus hijos, los codemandados Najul Zambrana consintieran a recibir dichos pagos. Es decir, concluyó que el expediente estaba huérfano de prueba que estableciera la intención clara y manifiesta de los codemandados Najul Zambrana de novar las condiciones pactadas.

En segundo lugar, el Tribunal de Apelaciones puntualizó que el tercer cheque no se hizo a nombre de los

demandados Najul Zambrana y que el mismo no fue suscrito por Associates, sino por el señor Israel Kopel en su carácter personal. Ante el hecho que varios de los comuneros estuvieron ausentes de dicha transacción, el Tribunal de Apelaciones concluyó que dicha transacción entre Associates, el señor Najul Bez y el Ingeniero Cordero, no podía obligar a los codemandados Najul Zambrana quienes, según dicho foro, tampoco otorgaron un mandato a favor del señor Najul Bez o del Ingeniero Cordero. Es decir, el tribunal concluyó que no se podía concluir que los hermanos Najul Zambrana consintieron a recibir de forma tardía el tercer pago hecho por el señor Israel Kopel.

Insatisfecho con la determinación del Tribunal de Apelaciones, Associates presentó recurso de *certiorari* ante este Tribunal. El 16 de marzo de 2007, expedimos el auto. Con el beneficio de los alegatos de ambas partes, procedemos a resolver.

**II**

Es la posición de la demandante-peticionaria que en el presente caso ocurrió una novación de los términos del contrato de opción. Sostiene que, mediante sus actos, los recurridos novaron las condiciones pactadas para ejercer las prórrogas del contrato de opción de compraventa y que ello tuvo el efecto de liberarla de las condiciones pactadas. Resalta que los recurridos aceptaron los pagos tardíos sin objeción alguna, por lo que se debe concluir

que éstos renunciaron a su derecho a resolver el contrato y están impedidos de negarse a vender la propiedad.

Por otra parte, los demandados-recurridos plantean que los demandantes-peticionarios no presentaron prueba tendente a establecer que todos los demandados, particularmente los hermanos Najul-Zambrana, aceptaron las actuaciones de los peticionarios a los fines de novar la obligación original. Es más, aducen que nunca aceptaron los incumplimientos de la parte peticionaria y que la omisión de cumplir con las condiciones del contrato de opción provocó la extinción del derecho de opción.

Veamos las características principales del contrato de opción y los contornos de la figura de la novación.

### III

En ausencia de regulación expresa del contrato de opción en el Código Civil, hemos acuñado una definición de dicho contrato. Lo hemos perfilado como el "convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Mayagüez Hilton Corp. v. Betancourt,* 156 D.P.R. 234, 246 (2002) (citas omitidas); *Atocha Thom McAn, Inc. v. Registrador,* 123 D.P.R. 571, 583 (1989). De este contrato nace un derecho que le confiere al optante la facultad de decidir, a su arbitrio, y dentro de un plazo cierto, si celebra el

contrato por el que se opta. *Mayagüez Hilton Corp. v. Betancourt, supra. Véase además,* J. P. Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Bosch, 1982, Tomo II, Vol. II, págs. 48-49.

La opción está atada a un contrato definitivo que las partes han delimitado previamente. *Mayagüez Hilton Corp. v. Betancourt, supra.* Por ejemplo, como ocurre en el presente caso, el contrato de opción le puede conceder al optante la posibilidad de decidir unilateralmente si perfecciona una compraventa, cuyos contornos se han detallado en el contrato de opción. *Mayagüez Hilton Corp. v. Betancourt, supra*, pág. 250; J. P. Brutau, *op. cit.,* pág. 50.

Por otro lado, el derecho de opción no sólo le concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que le impone al concedente la obligación de no frustrar el derecho del que goza el optante. *Mayagüez Hilton Corp. v. Betancourt, supra,* pág. 250*. Véase además,* J. Castán Tobeñas, *Derecho Civil Español, Común y Foral,* 14ta ed., Madrid, Reus, 1993, Tomo IV, págs. 54-55.

**IV**

Es norma claramente establecida en nuestro ordenamiento que la novación es una causa de extinción de las obligaciones. Art. 1110 Cód. Civ. P.R., 31 L.P.R.A. sec. 3151. No obstante, hemos reconocido que la novación incluye tanto la modalidad que tiene efectos extintivos,

como la novación modificativa en virtud de la cual subsiste una obligación alterada. *Véanse, Municipio de San Juan v. Professional,* 2007 TSPR 95, res. 18 de mayo de 2007, 171 D.P.R. __; *United Surety v. Villa,* 161 D.P.R. 618 (2004); *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 478 (1980).

La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. Artículo 1158, Código Civil, 31 L.P.R.A. sec. 3242. *G. & J., Inc. v. Doré Rice Mill, Inc.,* 108 D.P.R. 89, 91 (1978). De otra parte, se concreta la novación modificativa de una obligación cuando no exista la intención de extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva. *United Surety v. Villa,* *supra,* pág. 619.

El comentarista Manuel Albaladejo indica que cuando quede patente el ánimo de cambio pero no conste "la voluntad de que una [obligación] se *extinga* y otra *nazca,* entonces se entiende que subsiste la misma obligación, pero *modific[ada]*". M. Albaladejo, *Derecho Civil,* 8va ed, Barcelona, Bosch, 1989, T. II, Vol. 1, pág. 339. En modo análogo, postula Antonio Hernández Gil que "[l]a novación meramente modificativa, en cuanto a su constitución, se rige por las reglas generales de la exteriorización e interpretación de la voluntad, no requiriéndose, por lo tanto, un particular *animus novandi.*" A. Hernández Gil, *El*

*ámbito de la novación objetiva modificativa,* 45 Revista de Derecho Privado, 51, pág. 801 (1961).

El *animus novandi* es elemento indispensable de la novación extintiva. *Municipio de San Juan v. Professional, supra.* Se trata de la declaración expresa, terminante que el Artículo 1158 del Código Civil exige para extinguir una obligación. *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 389-90(1973). *Véase además,* A. Hernández Gil, *op. cit.,* pág. 799. Según indicamos en *United Surety v. Villa, supra*, la vertiente modificativa de la novación no precisa el *animus novandi* para alterar una obligación. En dicha ocasión aclaramos que la novación modificativa se configura cuando falta la voluntad expresa de las partes – *animus novandi*– o cuando existe compatibilidad entre las obligaciones. *United Surety v. Villa, supra*, pág. 619. Sin embargo, también señalamos que la modificación de la obligación no queda al arbitrio de una de las partes. Es decir, la ausencia del *animus novandi* no implica que nuestro ordenamiento admita la modificación unilateral de una obligación.

En suma, para su constitución, la novación modificativa no exige encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar **un ánimo de cambio**. De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes. Ello, debido a que la novación encierra un

asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. *Warner Lambert Co. v. Tribunal Superior, supra*, pág. 389.

En el pasado hemos indicado que no existe novación extintiva cuando se confieran facilidades para el cumplimiento de la obligación primitiva como, por ejemplo, cuando se conceden prórrogas o plazos fraccionados, salvo que el plazo sea una condición esencial en cuyo caso se entraría en el ámbito novación por incompatibilidad. *Miranda Soto v. Mena Eró, supra*, pás. 479-80. *Véase además,* J. Castán Tobeñas, *Derecho Civil Español Común y Foral,* 15ta ed., Madrid, Reus S.A., 1988, Tomo III, pág. 441. Hemos reconocido además, que un cambio en la duración del término de un contrato implica una novación modificativa pues no comporta una variación en la esencia de la obligación. *Caribe Lumber Corp. v. Marrero,* 78 D.P.R. 868, 877 (1955); *Atocha Thom McAn,* supra, pág. 582 (1989).

## V

En el presente caso, la determinación de si ocurrió una novación modificativa de los términos del contrato de opción requiere examinar la conducta de las partes a la luz de la prueba que obra en el expediente. La controversia medular gira en torno a si la aceptación de los pagos tardíos por concepto de la prima correspondiente al ejercicio de las prórrogas tuvo el efecto de extender la vigencia del contrato de opción a pesar de que la demandante-peticionaria -como optante- efectuó los pagos

una vez vencidos los plazos correspondientes y sin satisfacer las condiciones pactadas para ello, a saber, notificar el ejercicio de la prórroga con veinte días de anticipación y que la Junta de Planificación no aprobara la consulta del desarrollo propuesto.

No existe controversia en torno al hecho que los demandados-recurridos aceptaron un primer pago en concepto del depósito de la opción. Vencido el término original de la opción y el término para notificar el ejercicio de la primera prórroga, Associates realizó un segundo pago mediante cheque por la suma pactada en el contrato. El cheque se dirigió a nombre de cada uno de los demandados-recurridos, quienes lo endosaron. Así, aceptaron este segundo pago hecho fuera del término concedido en el contrato de opción. Vencida la primera prórroga de 180 días, se hizo un tercer pago. Esta vez, el señor Israel Kopel, dueño y accionista principal de Associates, suscribió el cheque y lo hizo a nombre de tres de los demandados-peticionarios, a saber, el Ingeniero Cordero, el señor Najul Bez y la señora Marta Romero. Por tanto, no incluyó a los demandados Najul Zambrana.

Adviene incontrovertible entonces, que los demandados-recurridos aceptaron el cheque correspondiente a la primera prórroga luego de vencido el plazo para ello. No obstante, existe controversia sobre la aceptación del pago correspondiente a la segunda prórroga.

Para sustentar su reclamo a los efectos de que los demandados-peticionarios aceptaron el último cheque, la peticionaria descansa en el testimonio prestado por el señor Najul Bez en su deposición. En lo pertinente a la controversia que nos ocupa, el señor Najul Bez manifestó en la deposición que sus hijos tenían conocimiento de que él recibió tres cheques y que también conocían que el tercer cheque se expidió en relación con la opción. Apéndice del recurso de *certiorari*, págs. 116-17. Reconoció además, que no les explicó a sus hijos que el tercer cheque sólo se giró a nombre de tres personas. *Id.,* pág. 117. El Tribunal de Apelaciones le negó "credibilidad" a las declaraciones del señor Najul Bez en la deposición. Entendió que "dicho testigo no fue presentado en juicio" y que para probar la aceptación del tercer pago, la demandante-peticionaria tenía que haber presentado el "testimonio vivo" del señor Najul Bez en el juicio. Al así proceder, incidió el foro apelativo intermedio. Veamos.

La Regla 29.1 de Procedimiento Civil rige la admisibilidad de una deposición en un juicio de carácter civil. 32 L.P.R.A., Ap. III, R. 29.1. Dicha Regla condiciona la admisibilidad de las deposiciones a varios requisitos de umbral. Además, establece varias condiciones que regulan los propósitos para los cuales se puede utilizar una deposición en un juicio o vista.

En primer término, la Regla 29.1 dispone que se podrá utilizar una deposición o parte de ella en un juicio o

vista, si su contenido es admisible de acuerdo con las Reglas de Evidencia, aplicadas como si el deponente estuviera testificando en corte. Dispone además, que sólo se podrá utilizar una deposición en contra de una parte que hubiere estado presente o representada en la toma de la deposición, o hubiere sido debidamente notificada de dicho acto. *Id.*

En segundo término, la Regla 29.1 regula las circunstancias específicas en las cuales se puede utilizar la deposición. En su inciso b, la referida Regla dispone que **"[l]a deposición de una parte**, o la de cualquier persona que en la fecha en que se tomó la deposición era un oficial, funcionario, director o agente administrador o persona designada bajo la Regla 27.5 para testificar a nombre de una corporación pública o privada, sociedad, asociación o agencia gubernamental, que sea parte en el pleito, **podrá utilizarse por la parte adversa para cualquier propósito"**. *Id.* (énfasis nuestro). Es decir, se podrá utilizar la deposición de una parte para cualquier propósito, siempre que ésta sea admisible bajo las Reglas de Evidencia. Nótese que este inciso no sujeta la admisibilidad de la deposición como prueba sustantiva a la no disponibilidad del testigo.

En *F.D.I.C. v. Caribbean Mktg. Ins. Agency,* 123 D.P.R. 247, 256 (1989), aclaramos que la deposición de una parte adversa es admisible al amparo del inciso b de la Regla 29.1 como prueba directa o sustantiva y que la única

cortapisa a su admisibilidad es que el contenido de ésta sea admisible bajo las Reglas de Evidencia. En dicho caso, resolvimos que las declaraciones de los demandados en ciertas deposiciones eran admisibles bajo la Regla 29.1(b) y que además, las declaraciones contenidas en dichas deposiciones eran admisibles a su vez, como admisiones de parte, puesto que constituían una excepción a la regla de exclusión de prueba de referencia. Regla 62(a), de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV.

En el presente caso, el Tribunal de Apelaciones determinó que la demandante-peticionaria debió presentar el testimonio del señor Najul Bez en juicio. Aun cuando podemos discernir que nuestro derecho probatorio favorece que los testigos comparezcan al juicio y estén sujetos allí a contra interrogatorio, no podemos olvidar que la Regla 29.1(b) de Procedimiento Civil permite presentar la deposición de una parte, sin necesidad de que el testigo comparezca al juicio y sin exigir que el promovente acredite que el testigo no está disponible en el juicio. Vemos entonces que por vía de la Regla 29.1 de Procedimiento Civil, la deposición de una parte es admisible como excepción a la regla de exclusión de prueba de referencia.

Reconociendo que nuestro ordenamiento rechaza admitir declaraciones hechas fuera de corte para probar la verdad de lo aseverado, puesto que la parte contra quien se ofrece no ha podido confrontar al declarante mediante su

testimonio en corte bajo juramento, el legislador optó por permitir que se admita la deposición si la parte contra la que se ofrece estuvo presente en la deposición, estuvo representada o recibió una debida notificación sobre la toma de deposición. *Véase* sobre la regla de exclusión de prueba de referencia, E.L. Chiesa, *Tratado de Derecho Probatorio,* Publicaciones JTS, República Dominicana, 1998, Tomo II, págs.615-17.

Así, nuestro ordenamiento le confiere confiabilidad a la declaración hecha en una deposición en la que la parte adversa estuvo presente o estuvo representada, por lo que la deposición será admisible sin necesidad de que el testigo comparezca a la vista. Ello, claro está, sujeto a que las declaraciones contenidas en la deposición sean admisibles conforme a las Reglas de Evidencia. Recordemos además, que en una deposición, como ocurrió en este caso, quien testifica está sujeto a ser interrogado y contra interrogado por los representantes de las partes. Por tanto, erró el Tribunal de Apelaciones al determinar que no procedía evaluar el valor probatorio de las declaraciones del señor Najul Bez en su deposición, bajo el fundamento de que era necesario presentar su testimonio en corte abierta.

El estudio de la trascripción de la vista celebrada en el presente caso revela que el foro primario admitió en evidencia la deposición del señor Najul Bez. El señor Najul Bez no compareció al juicio debido a su precaria

condición de salud.[1] Tras varias argumentaciones de derecho probatorio, el Tribunal de Primera Instancia admitió la deposición y ambas partes tuvieron la oportunidad de leer diferentes partes de ésta para efectos del récord. *Véase* Transcripción de la vista del 5 de marzo de 2003, págs. 35-42; vista del 6 de junio de 2003, págs. 29-38. En virtud de ello, se admitieron las declaraciones del señor Najul Bez en torno a que sus hijos conocían que se hizo el tercer pago en concepto del contrato de opción y a que el señor Najul Bez no les explicó que el cheque sólo se había girado a nombre de tres personas. También se admitieron sus declaraciones a los efectos de que al momento de otorgar la compraventa, sus hijos se opusieron debido a los incumplimientos de la demandante con el contrato. *Id.,* págs. 37-38.

A la luz del contendido de la deposición del señor Najul Bez, es menester concluir que la misma era admisible al amparo de la Regla 29.1 (b) de Procedimiento Civil. No sólo fue admitida en el juicio como prueba, sino que no encontramos razón alguna para determinar que era inadmisible, puesto que se trata de la deposición de una parte y la misma fue presentada en el juicio por la parte adversa. Además, los demandados-recurridos estuvieron

---

[1] El representante legal del señor Najul Bez presentó un certificado médico acreditando que su representado no podía comparecer por su condición de salud. Además, se indicó que su avanzada edad también le impedía comparecer al juicio. Apéndice del recurso de *certiorari*, págs. 28-32.

representados en la toma de deposición por el abogado que para esa fecha los representaba en el pleito.

Luego de aquilatar el valor probatorio de la declaración del señor Najul Bez en tanto adujo que sus hijos, los demandados Najul Zambrana, tenían conocimiento de que se realizó el tercer pago por concepto de la prórroga de la opción, entendemos que en efecto, los demandados-recurridos conocían que la demandante-peticionaria realizó el pago correspondiente a la tercera prórroga. A pesar de que el señor Najul Bez hizo esta declaración en su carácter individual, los demandados Najul Zambrana no presentaron prueba testifical para rebatirla, pues sometieron su caso luego de que la demandante-peticionaria desfiló su prueba. Ante ello, la declaración del señor Najul Bez estableció que los demandados Najul Zambrana conocieron que la demandante-peticionaria efectuó el último pago en concepto de la prórroga.

Lo anterior, en unión a la prueba documental que obra en autos y a las demás actuaciones de las partes sobre las que no hay controversia, nos lleva a concluir que los demandados-recurridos aceptaron los pagos tardíos por concepto de las prórrogas del contrato de opción y de esta forma se configuró una novación de los términos y condiciones de dicho contrato. Veamos.

El plazo original del contrato de opción vencía el 14 de septiembre de 1999. El 12 de noviembre de 1999, los demandados-peticionarios aceptaron un segundo pago por

concepto de la primera prórroga pactada para el contrato de opción. En dicho momento los demandados-recurridos no solicitaron resolver el contrato de opción, ni alegaron que el plazo de la opción había vencido. Por tanto, prestaron su consentimiento para extender la vigencia de la opción por 180 días adicionales, a pesar de que el pago fue tardío y de que la demandante-peticionaria no cumplió con las demás condiciones del ejercicio de la prórroga.

Así las cosas, vencida la segunda prórroga, el señor Kopel, socio administrador y accionista principal de Associates, efectuó un tercer pago. Giró un cheque de la cuenta personal que posee con su esposa. A su vez, tres de los demandados endosaron y cambiaron el cheque. Según surge de la deposición del señor Najul Bez, los demandados Najul Zambrana conocían que se había efectuado el tercer pago en concepto de la opción. A pesar de ello, no fue hasta el momento en que la demandante-peticionaria intentó otorgar la escritura de compraventa, que los demandados se negaron a vender la propiedad, invocando el incumplimiento de las condiciones pactadas en el contrato de opción. Es decir, a pesar de conocer que se habían realizado dos pagos sin cumplir con las condiciones del contrato respecto a las prórrogas, los demandados-peticionarios, incluyendo a los hermanos Najul Zambrana, no se opusieron a recibir los pagos por concepto de la prórroga al contrato de opción.

Todo lo anterior nos lleva a concluir que nos encontramos ante una novación modificativa tácita de los

términos y condiciones del contrato de opción. Las circunstancias del presente caso demuestran que los demandados condonaron los pagos tardíos, la falta de notificación oportuna y la omisión de acreditar que la Junta de Planificación no había aprobado la consulta del proyecto. Conforme indica el comentarista español, Luis Diez-Picazo, ocurre una declaración de voluntad tácita cuando "el sujeto no manifiesta de modo directo su voluntad mediante los signos adecuados para ello, sino que realiza una determinada conducta que por presuponer necesariamente tal voluntad es valorada como declaración por el ordenamiento jurídico". L. D. Díez-Picazo, *Sistema de Derecho Civil,* 7ma ed., Madrid, Tecnos, 1989, Volumen I, pág.507. Por nuestra parte, hemos indicado que el elemento crucial del consentimiento tácito es la conducta de la persona, la cual debe revelar de forma inequívoca, la voluntad de consentir. *Teachers Annuity v. Soc. de Gananciales,* 115 D.P.R. 277, 290 (1984).

La conducta de las partes en este caso demuestra la voluntad de modificar los términos del contrato de opción. Los demandados-recurridos recibieron sin objeción los pagos por concepto de la prórroga del contrato de opción. A pesar de que los demandados Najul-Zambrana no endosaron el tercer cheque, la prueba que obra en autos demuestra que ellos conocían que se había realizado dicho pago por concepto de la opción y no se opusieron al mismo. Tampoco solicitaron resolver el contrato de opción, ni alegaron que

el derecho de opción se había extinguido. Al así actuar, modificaron los términos y condiciones del contrato de opción y relevaron a la demandante-peticionaria de las condiciones para el ejercicio de la opción. Como consecuencia de ello, se mantuvo vigente el contrato durante los términos pactados para las prórrogas, es decir, hasta el 10 de junio de 2000. Los recurridos estaban impedidos de negarse a otorgar la escritura de compraventa.

El hecho que el señor Israel Kopel, en lugar de Associates, emitiera el tercer cheque no obliga una determinación distinta. Como es sabido, en nuestro ordenamiento se reconoce la figura del pago por tercero. Una vez el tercero con interés paga una deuda, se subroga en los derechos del acreedor original. Artículo 1163 del Código Civil, 31 L.P.R.A. sec. 3247; *Eastern Sands, Inc. v. Roig Comm. Bank,* 140 D.P.R. 703, 713-17 (1996). En calidad de accionista principal y socio administrador de Associates, el señor Israel Kopel, efectuó un pago válido por concepto de la opción. Lo hizo con fondos pertenecientes a la Sociedad de Bienes Gananciales que compone junto a su esposa. Sin duda, el señor Israel Kopel poseía un interés en el cumplimiento de las disposciones del contrato de opción. Por tanto, el efecto inmediato de dicho pago es que subrogó al señor Kopel y a la Sociedad de Bienes Gananciales en los derechos de Associates. El pago por tercero sólo representó una modificación en la figura del acreedor, por lo que el pago es válido y tuvo el efecto

de mantener vigente el contrato de opción y la correlativa obligación de respetarlo.

Por los fundamentos antes expuestos se revoca la sentencia del Tribunal de Apelaciones y se declara con lugar la demanda. Se ordena a la parte demandada-recurrida vender a la demandada-peticionaria el inmueble, según los términos pactados en el contrato de opción.

Se dictará Sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

P.D.C.M. Associates,S.E.

    Peticionaria

       v.                    CC-2007-93

Elías Najul Bez, *et al.*

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 7 de agosto de 2008

Por los fundamentos anteriormente expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia del Tribunal de Apelaciones y se declara con lugar la demanda. Se ordena a la parte demandada-recurrida vender a la demandada-peticionaria el inmueble, según los términos pactados en el contrato de opción.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo