ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| BHC, LLC<br><br>Apelante<br><br>v.<br><br>ERIC A. VELASCO ÁLVAREZ, ETELVINA GARCÍA VERDESIA y la SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR ELLOS<br><br>Apelados | KLAN202400800 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.:<br>BY2023CV01878<br><br>Sobre:<br>Cobro de Dinero y Daños y Perjuicio |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 18 de octubre de 2024.

Este Recurso de *Apelación* fue presentado por Better Housing Capital, LLC (en adelante, BHC o Apelante) el 30 de agosto de 2024. La parte apelada consiste en Eric Velasco Álvarez, su esposa Etelvina García Verdesia, y la sociedad legal de bienes gananciales compuesta por ambos (en adelante matrimonio Velasco-García o apelados). La Apelante nos solicita que revoquemos la *Sentencia Sumaria* dictada el 9 de julio de 2024 y notificada el 12 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicha *Sentencia Sumaria*, el TPI declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por los apelados. Determinó que BHC incumplió con los términos del contrato de opción de compra suscrito entre las partes, e incurrió en conducta temeraria por exigir la devolución del depósito que entregó para el ejercicio de

la opción. Resolvió que no procede la devolución de la suma de $25,000.00 entregada por BHC, y le condenó al pago de $2,500.00 por concepto de honorarios por temeridad, a favor de co apelados.

Por los fundamentos que exponemos a continuación, revocamos, la sentencia apelada.

## I.

El 26 de abril de 2022, el matrimonio Velasco-García, como parte vendedora, y BHC, como parte compradora, suscribieron un Contrato de Opción de Compra a favor de BHC. Mediante dicho acuerdo, el matrimonio Velasco-García le concedió a BHC una opción de compraventa sobre un edificio ubicado en la Calle José A. Vargas Núm. 12 y el estacionamiento posterior colindante, ubicado en la calle Corchado #7, Isabela, Puerto Rico.

Al momento de la firma del Contrato de Opción, BHC le entregó al matrimonio Velasco-García la suma de $25,000.00 por concepto de la opción. Dicha opción tenía un plazo de duración de noventa (90) días, cuya fecha de vencimiento era el 25 de julio de 2022. En caso de desistir de efectuar la compraventa, BHC debería comunicar por escrito su objeción a completar el cierre para que los apelados le devolvieran el depósito. En la cláusula quinta del contrato, las partes estipularon que el dinero depositado por BHC solo sería devuelto si no se podía realizar la compraventa por motivos que fueran atribuibles al matrimonio Velasco-García. En cualquier otro caso en el cual BHC no pudiese realizar el cierre dentro del periodo acordado, los $25,000.00 serían retenidos por los apelados.

El 11 de abril de 2023, BHC presentó una demanda en cobro de dinero y daños y perjuicios en contra del matrimonio Velasco-García. Adujo que, al momento de la firma, le entregó a los co

apelados la suma de $25,000.00 por concepto de la opción. Sostuvo que, transcurridos más de doscientos (200) días desde otorgado el Contrato de Opción, no se había podido realizar el otorgamiento de la escritura de compraventa porque no se habían resuelto los problemas de las propiedades en el Registro de la Propiedad. BHC arguyó que esas razones eran atribuibles al matrimonio Velasco-García y, siendo ello el impedimento para realizar la compraventa, correspondía que le devolvieran la suma de $25,000.00, según dispuesto en el Contrato de Opción.

El 15 de junio de 2023, el matrimonio Velasco-García presentó su *Contestación a Demanda* mediante la cual alegaron que actuaron de buena fe y con diligencia para corregir y atender las faltas en el Registro de la Propiedad, según señaladas por la notaria elegida por BHC. Los apelados indicaron que estuvieron en todo momento en disposición de otorgar la compraventa e incluso que, en múltiples ocasiones, solicitaron que se estableciera la fecha para el otorgamiento de la escritura de compraventa. Asimismo, argumentaron que la compraventa no se realizó por razón atribuible a BHC, y por la notaria no haber sido diligente. A esos efectos, adujeron que no procedía la devolución del depósito de $25,000.00 ya que fue BHC el que abandonó la transacción y es el único responsable de que la misma no se completara.

El TPI, luego de varias *Mociones solicitando Sentencia Sumaria* por ambas partes, emitió *Sentencia Sumaria* el 9 de julio de 2024 y notificada a las partes el 12 de julio de 2024. Dicha sentencia resolvió que no procedía la devolución de la suma de $25,000.00 entregada por BHC, por concepto del Contrato de Opción. Además, se le impuso el pago de honorarios de abogados contra BHC por la suma de $2,500.00, en favor del matrimonio Velasco-García.

En dicha Sentencia el TPI hizo las siguientes determinaciones de hechos:

**DETERMINACIONES DE HECHOS QUE DETERMINÓ EL TPI QUE NO ESTABAN EN CONTROVERSIA**

1. El 26 de abril de 2022, BHC y el matrimonio Velasco-García otorgaron en San Juan, Puerto Rico, el Contrato de Opción de Compraventa de las propiedades localizadas en la Calle José A. Vargas #12 y en la Calle Corchado #7, Isabela, Puerto Rico.

2. El Contrato de Opción fue preparado por Velasco Álvarez.

3. BHC compareció al Contrato de Opción representado por el licenciado Daniel Font (en adelante "Lcdo. Font"), quien ocupaba la posición de *Acquistion and Legal Director* en dicha compañía.

4. En el Contrato de Opción, el matrimonio Velasco-García firmó en calidad de vendedores y BHC en calidad de comprador.

5. Al momento de la firma del Contrato de Opción, BHC le entregó al matrimonio Velasco-García la suma de $25,000.00 por concepto de la opción.

6. En la cláusula 4 del Contrato de Opción, las partes acordaron que:

   **4. Due Diligence**: El comprador efectuará sus gestiones de "due diligence" dentro de los 30 días a partir de la firma de este contrato. Dichos días correrán concurrentes con el tiempo otorgado para completar el cierre. En caso del Comprador desistir de efectuar la compraventa deberá comunicar por escrito su objeción a completar el cierre de la transacción para que el Vendedor le devuelva el depósito ($25,000). La objeción de que de tal manera exprese el Comprador deberá estar fundamentada.

7. Asimismo, en la cláusula 5 del Contrato de Opción, las partes pactaron que:

**5. Incumplimiento**: Si la compraventa no se lleva a cabo por cualquier causa atribuible al Comprador, el Vendedor retendrá los $25,000 como compensación por haber retirado del mercado la Propiedad durante los 90 días de la opción incurriendo el Vendedor durante dicho tiempo en numerosos gastos inclusive del CRIM, y perdiendo la oportunidad de vender la propiedad a un tercero que pudiera interesarla durante estos 90 días. El dinero depositado por el Comprador con el Vendedor ($25,000) solo sería devuelto al Comprador si en efecto no se pudiera realizar la compraventa por motivos que fueran atribuibles al Vendedor siendo en dicho caso la devolución de los $25,000 la única y total compensación a que tendría derecho el Comprador, que así lo acepta con la firma de este contrato. En cualquier otro caso, inclusive de que el Comprador no pueda obtener los fondos para el cierre, u cualquier otra razón por la cual no pueda realizar el cierre según pautado dentro de los 90 días, dicho dinero será retenido por el Vendedor.

8. En lo relativo a cargas y gravámenes, en la cláusula 12 del Contrato de Opción, las partes acordaron que "la mencionada finca se entregará libre de arrendatarios, cargas y gravámenes, con todos sus derechos, usos y servidumbres según la inscripción en el Registro de la Propiedad".

9. Además, en la cláusula 14 del Contrato de Opción, las partes pactaron que "el comprador acuerda contratar al notario que realice el cierre y se compromete a pagar los honorarios del notario, inclusive de la preparación de las escrituras".

10. A esos efectos, BHC contrató los servicios profesionales de la notaria pública Cristina García.

11. En el Contrato de Opción, no se incluyó que la venta estuviera sujeta a la obtención de un seguro de título.

12. El Contrato de Opción tenía un plazo de duración de noventa (90) días.

13. A dos (2) días de firmar el Contrato de Opción, el 28 de abril de 2022, Velasco le cursó un correo electrónico al Lcdo. Font y al Lcdo. Alexis Llompart mediante el cual:

    a. Les acompañó la tasación de la propiedad;

    b. Les informó que su abogado, Lcdo. Víctor M. Rivera Torres, estaba preparando una escritura de rectificación de cabida y agrupación de las Propiedades y se le brindó la información de contacto del abogado;

    c. Les proveyó información de contacto de su hijo para en caso de que necesitaran cualquier documento para preparar el cierre;

    d. Les proveyó información de contacto de su otro hijo que tenía las llaves del edificio en caso de que las necesitaran;

    e. Les informó sobre el interés que había tenido el Municipio en el pasado para adquirir el estacionamiento.

14. El 3 de junio de 2022, dentro del término de los noventa (90) días, Velasco le solicitó a Oriental Bank substituir la colateral que gravaba el edificio ubicado en la Calle José A. Vargas #12 en Isabela, Puerto Rico.

15. Faltando trece (13) días para vencer el Contrato de Opción, el 12 de julio de 2022, la notaria García le cursó un correo electrónico al matrimonio Velasco-García cuestionando si existía una hipoteca que afectaba alguna de las Propiedades.

16. A esa misma fecha, el 12 de julio de 2022, BHC no había mandado a realizar un estudio de título de la propiedad.

17. Faltando cuatro (4) días para vencer el Contrato de Opción, el 21 de julio de 2022, la notaria García le notificó al matrimonio Velasco-García una primera lista de señalamientos sobre defectos en las inscripciones registrales de la propiedad.

18. Al día siguiente, el 22 de julio de 2022, las partes suscribieron una primera extensión al Contrato de Opción titulada *Contrato de Extensión del Término de Compraventa* en el cual se pactó que la escritura de compraventa sería preparada por la notaria García y que se ejecutaría en o antes del 15 de agosto de 2022. Los demás términos y condiciones del contrato original se mantenían sin cambios.

19. El 22 de julio de 2022, las fincas núm. 2429 y núm. 4648 tenían hipotecas y embargos y no se había presentado al Registro de la Propiedad documento alguno para la cancelación de los mismos.

20. El término del Contrato de Opción venció el 25 de julio de 2022.

21. El 26 y 27 de julio de 2022, Saulo Betancourt Rivera d/b/a Sayad Title Search preparó unos estudios de títulos sobre las fincas núm. 2429 y núm. 4648.

22. El 1 de agosto de 2022 se retiró la escritura de agrupación de las Propiedades objeto del Contrato de Opción que se había presentado en el Registro de la Propiedad.

23. El 4 de agosto de 2022, Velasco suscribió la escritura número veintisiete (27) de Cancelación de pagaré ante el notario público Víctor M. Rivera Torres para la cancelación del pagaré hipotecario a favor de BBVA por

la suma principal de $350,000.00 sobre la finca núm. 4648.

24. En esa misma fecha, Velasco suscribió la escritura número veintiocho (28) de Cancelación de pagaré ante el notario público Víctor M. Rivera Torres para la cancelación del pagaré hipotecario a favor de BBVA por la suma principal de $93,000.00 sobre la finca núm. 4648.

25. El 9 de agosto de 2022 Velasco suscribió una Instancia al Registrador de la Propiedad a los fines de solicitar la cancelación por prescripción de los siguientes gravámenes sobre la finca núm. 2429: (1) una hipoteca por la suma principal de $3,000.00; (2) un embargo a favor del ELA por la suma $2,653.46; y (3) un embargo a favor del ELA por la suma de $41,682.85.25.

26. Dos (2) días después, el 11 de agosto de 2022 se presentaron las escrituras número veintisiete (27) y número veintiocho (28), y la Instancia al Registrador de la Propiedad para la cancelación de los gravámenes prescritos en el Registro de la Propiedad.

27. El 15 de agosto de 2022 venció el término de la primera extensión del Contrato de Opción.

28. El 31 de agosto de 2022, las partes suscribieron una segunda extensión al Contrato de Opción titulada *Contrato de Extensión del Término de Compraventa* en el cual pactaron que la escritura de compraventa sería preparada por la notaria García y que debía ejecutarse en o antes del 18 de septiembre de 2022. Los demás términos y condiciones del contrato original se mantuvieron sin cambios.

29. Faltando diez (10) días para vencer el término de la segunda extensión del Contrato de Opción, el 8 de septiembre de 2022, la notaria García emitió una segunda lista de señalamientos que incluye: (1) falta de inscripción de unos derechos hereditarios, (2) falta de presentación de unas certificaciones negativas de ASUME, (3) inscripción de derechos hereditarios distintos al testamento y (4) falta de presentación de testamento.

30. Al día siguiente, el 9 de septiembre de 2022, el matrimonio Velasco-García remitió la lista de señalamientos al notario Sosa para que procediera con la corrección de los mismos.

31. Ese mismo día en que el notario Sosa recibió la segunda lista de señalamientos, el 9 de septiembre de 2022, se expidieron las certificaciones negativas de ASUME que faltaban.

32. El 15 de septiembre de 2022, las partes suscribieron una tercera extensión al contrato de opción titulada *Contrato de Extensión del Término de Compraventa* en el cual se pactó que la escritura de compraventa iba a ser preparada por la notaria García y que iba a ser ejecutada en o antes del 31 de octubre de 2022.

33. Al día siguiente, el 16 de septiembre de 2022, el notario Sosa le cursó una carta a Velasco informando las gestiones que llevaría a cabo para atender la lista de señalamientos de la notaria García.

34. El 18 de septiembre de 2022 venció el término de la segunda extensión del Contrato de Opción.

35. El 5 de octubre de 2022, BHC le informó a Velasco que el otorgamiento de la escritura de compraventa no podría

llevarse a cabo durante esa semana, por lo que le cursó una nueva extensión de contrato hasta el 31 de octubre de 2022 para ser firmado.

36. El 10 de octubre de 2022 se presentó una Instancia enmendada en el Registro de la Propiedad para hacer corrección.

37. El 12 de octubre de 2022, Velasco le cursó un correo electrónico a la notaria García en el cual le informó sobre las gestiones hechas por el notario Sosa respecto al tracto registral.

38. Al 20 de octubre de 2022, a tenor con los estudios de título preparados por Professional Title Services de las fincas núm. 2429, núm. 3850, núm. 3851 y núm. 4647, había múltiples documentos presentados en el Registro de la Propiedad que no habían sido calificados ni inscritos por el Registrador de la Propiedad.

39. Faltando tres (3) días para vencer el término de la tercera extensión del Contrato de Opción, el 28 de octubre de 2022, la notaria García le cursó a Velasco la tercera lista de señalamientos, según le fue notificada por los abogados del bufete Ferraiuoli que asistieron a la notaria.

40. El 31 de octubre de 2022 venció el término de la tercera extensión del Contrato de Opción.

41. En esa misma fecha, el 31 de octubre de 2022, BHC envió a Velasco una cuarta extensión al término del Contrato de Opción para ser firmados por el matrimonio Velasco-García. Además, se reiteró el interés en otorgar la escritura de compraventa en o antes del 15 de noviembre de 2022.

42. El matrimonio Velasco-García no firmó la extensión del Contrato de Opción recibida el 31 de octubre de 2022.

43. El 8 de noviembre de 2022, el notario Sosa le cursó una carta al matrimonio Velasco-García para informar sobre las gestiones realizadas respecto a la tercera lista de señalamientos.

44. En esa misma fecha, el matrimonio Velasco-García envió a la notaria García el detalle de las gestiones que llevó a cabo el notario Sosa para atender la tercera lista de señalamientos.

45. El 22 de noviembre de 2022, Velasco informó que se corrigieron los señalamientos de falta y solicitó que se pautara la fecha para el otorgamiento de la escritura de compraventa.

46. El 23 de noviembre de 2022, BHC reiteró al matrimonio Velasco-García su interés en el otorgamiento de la escritura de compraventa lo antes posible la escritura de compraventa. No obstante, manifestó que estaba en la espera del seguro de título.

47. En respuesta, el 23 de noviembre de 2022, Velasco le indicó que ya había cumplido con tener las propiedades libres de gravámenes. Le aclaró que en ningún momento se comprometieron a hacerle asequible el seguro de título. Además, le solicitó que fijaran una fecha final y firme para el otorgamiento de la escritura de compraventa dentro de los próximos veintitrés (23) días.

48. En esa misma fecha, el 23 de noviembre de 2022, la notaria García emitió un nuevo señalamiento en el cual indicó que en la escritura de compraventa mediante la cual el matrimonio Velasco-García había adquirido los

tres (3) solares que comprenden el estacionamiento, no se había distribuido el precio total entre las tres (3) fincas.

49. El 29 de noviembre de 2022, Velasco notificó al notario Sosa sobre el cuarto señalamiento de falta.

50. Al día siguiente, el 30 de noviembre de 2022, Velasco informó a la notaria García que se sometería un Acta Aclaratoria al Registro para subsanar el defecto señalado.

51. BHC se comunicó mediante llamada telefónica con Velasco y le expresó su intención de dar por terminado el acuerdo de opción de compraventa.

52. El 1 de diciembre de 2022, BHC mediante correo electrónico reiteró al matrimonio Velasco-García que no se pudo realizar la compraventa por razones atribuibles a ellos y les solicitó la devolución de la suma de $25,000.00.

53. El matrimonio Velasco-García se negó devolverle a BHC la suma de $25,000.00.

54. El 3 de febrero de 2023, el matrimonio Velasco-García otorgó y presentó en el Registro una Acta Aclaratoria para corregir la escritura mediante la cual compraron tres (3) de las propiedades.

55. El 2 de febrero de 2024, el matrimonio Velasco-García otorgó una Instancia para que se cancelara una hipoteca por $3,000.00, un embargo por $2,653.46 y un embargo por $1,682.85 que gravaban una de las propiedades.

Con esas determinaciones de hechos que no están en controversia, el TPI dictó la Sentencia contra la cual la Apelante recurre a este foro en *Apelación* y plantea los siguientes errores:

PRIMER ERROR: ERRÓ el TPI al determinar que los apelados fueron diligentes a pesar de no haber tenido las propiedades libres de cargas y gravámenes para su entrega dentro del término del contrato de opción a compra y de sus extensiones.

SEGUNDO ERROR: ERRÓ el TPI al imponer a la apelante honorarios de abogado por temeridad.

TERCER ERROR: ERRÓ el TPI al interpretar que el término de 30 días correspondiente al "due diligence" que dispone el artículo 12 del Contrato de Opción de Compraventa impuso a la apelante la obligación de tomar conocimiento de las constancias del Registro de la Propiedad y notificar las faltas y problemas registrales de las propiedades opcionadas.

CUARTO ERROR: ERRÓ el TPI al imponer a la apelante la obligación de poner las propiedades en condiciones de ser vendidas.

Habiendo las partes comparecido con sus escritos, estamos en posición de resolver.

## II.

### A.

Es norma reiterada que nuestro ordenamiento procesal civil reconoce el uso y valor del mecanismo de la sentencia sumaria como vehículo para asegurar la solución justa, rápida y económica de un caso. Cruz López y otros v. Casa Bella y otros, 2024 TSPR 47, 213 DPR ___ (2024); Universal Company y otros v. ELA, 211 DPR 455, 471 (2023); Meléndez González et al. v. M. Cuebas, 193 DPR 100, 109 (2015); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430 (2013); Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Tal herramienta posibilita la pronta resolución de una controversia cuando no se requiera la celebración de un juicio en su fondo.

Para que proceda este mecanismo, es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Universal Company y otros v. ELA, *supra*; Ramos Pérez v. Univisión, *supra*,

pág. 214. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Company y otros v. ELA, *supra*; Meléndez González et al. v M. Cuebas, *supra*; Ramos Pérez v. Univisión, *supra*, pág. 213.

Así pues, para adjudicar en los méritos una controversia de forma sumaria, es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja de que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. Pérez Vargas v. Office Depot, 203 DPR 687, 699 (2019); Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V.

La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e).

Una vez presentadas la solicitud de sentencia sumaria y su oposición, el tribunal analizará tanto los documentos incluidos en ambas mociones como los que obren en el expediente del tribunal, y determinará si la parte opositora controvirtió algún hecho material y esencial o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. Bobé et al. v. UBS Financial Services, *supra*. La omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática. Mun. de Añasco v. ASES et al., 188 DPR 307, 327 (2013); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541,

556 (2011); González Aristud v. Hosp. Pavía, 168 DPR 127, 138 (2006). Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable, y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Meléndez González et al. v. M. Cuebas, supra, pág. 109.

Si el cúmulo de la evidencia demuestra que en efecto no hay controversia sustancial respecto a algún hecho esencial y pertinente, el tribunal deberá dictar sentencia sumaria si procede como cuestión de derecho. Esto es, si el derecho así lo justifica. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; Universal Company y otros v. ELA, supra; Oriental Bank v. Perapi et al., 192 DPR 7, 25 (2014). A su vez, el Tribunal Supremo ha destacado que no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. Cruz López y otros v. Casa Bella y otros, supra; Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010).

A tenor con lo anterior, al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria, como foro intermedio podemos: (1) considerar los documentos que se presentaron ante el foro primario, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964, 981 (2022); Meléndez González et al. v. M. Cuebas, supra, pág. 114. Así pues, el Tribunal de Apelaciones se encuentra en la misma posición del

Tribunal de Primera Instancia al momento de revisar solicitudes de Sentencia Sumaria. Esta revisión es una *de novo*. Cruz López y otros v. Casa Bella y otros, *supra*; Segarra Rivera v. Int'l Shipping, et al., *supra*; Meléndez González et al. v. M. Cuebas, *supra*, pág. 116.

**B.**

Como se sabe, las obligaciones nacen de la ley, de los contratos, cuasicontratos, de los actos ilícitos, los actos u omisiones en que interviene culpa o negligencia; y cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico. Artículo 1063 del Código Civil de 2020, 31 LPRA sec. 8984.

Así, una de las fuentes de las obligaciones es el contrato. Este se define como, "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." Artículo 1230 del Código Civil de 2020, supra, sec. 9751.

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil de 2020, supra, sec. 9771.

Existe consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación. Artículo 1238 del Código Civil de 2020, supra, sec. 9772. La oferta se define como "el acto jurídico unilateral, dirigido a una persona determinable, que contiene los elementos necesarios para la existencia del contrato propuesto, o el medio para establecerlos."

De otro lado, es principio básico del derecho de obligaciones que nadie está obligado a contratar. PRFS v. Promoexport, 187

DPR 42, 55 (2012); <u>Colón v. Glamorous Nails</u>, 167 DPR 33, 44 (2006); <u>Prods. Tommy Muñiz v. COPAN</u>, 113 DPR 517, 526 (1982).   En esa línea, vale destacar que en nuestra jurisdicción rige el principio de autonomía de la voluntad de las partes o la libertad contractual en virtud del cual "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público." Art. 1232 del Código Civil de 2020, supra, sec. 9753. <u>Engineering Services v. AEE</u>, *supra*, en la pág. 1027; <u>Feliciano v. Luxury Hotels Int'l of P.R. Inc.</u>, 210 DPR 712, 728 (2022). Como corolario de lo anterior, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. <u>Mercado, Quilichini v. UCPR</u>, 143 DPR 610, 627 (1997).

Por último, cuando hay divergencia en cuanto a la interpretación de los contratos, el Artículo 354 del Código Civil de 2020, supra, sec. 6342, provee las siguientes reglas sobre la interpretación del negocio jurídico:

> a) se presume que el negocio jurídico se otorga de buena fe;
>
> b) si el negocio jurídico es unilateral, se atenderá al sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad de su autor. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo.
>
> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
>
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
>
> Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico.

**C.**

El Código Civil vigente en Puerto Rico, distinto al Código Civil de Puerto Rico de 1930, regula el *contrato de opción de compra*. Según se define en el Artículo 1029 del Código Civil del 2020, supra, "es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado". 31 LPRA sec. 8821. Anteriormente, nuestro Tribunal Supremo lo había definido como "el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, a su exclusivo arbitrio, de decidir si celebra un contrato principal". P.D.C.M. Assoc. v. Najul Báez, 174 DPR 716, 724 (2008); SLG Irizarry v. SLG García, 155 DPR 713, 722 (2001).

Un aspecto neurálgico de dicho contrato es que la opción tiene que ejercitarse dentro de un plazo definido. Atocha Thom McAn, Inc. v. Registrador, 123 DPR 571, 583 (1989). Si se renuncia dicho derecho de opción o no se ejercita durante el término concedido, queda extinguido el derecho. Mayagüez Hilton Corp. v. Betancourt, 156 DPR 234, 249 (2002). Es importante destacar que el optatario viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente*. Mayagüez Hilton Corp. v. Betancourt*, *supra*, pag.250.

El Artículo 1030 del Código Civil vigente enumera algunos requisitos que, como mínimo, debe contener la opción de compra para su constitución. (31 LPRA sec. 8822). Además de los pactos

que las partes establezcan, se exige que los contratos de opción a compra contengan: (1) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (2) en su caso, la voluntad de que se constituya el derecho con carácter real; (3) el precio para adquirir el bien o criterios para fijarlo; y (4) la prima pactada para constituir la opción. (31 LPRA sec. 8822). Cuando el derecho de opción es sobre una adquisición onerosa, se debe indicar el precio estipulado para su adquisición. *Íd*. De igual manera, cuando el derecho se constituye a título oneroso, se debe indicar el precio pactado por las partes para ello. *Íd*.

Por otro lado, el Tribunal Supremo de Puerto Rico ha aceptado la tesis que predomina en la doctrina española relacionado a esta figura jurídica; y ha adoptado los requisitos esenciales que debe poseer un contrato de opción de compra en dicha doctrina. Estos son: "1ro. Concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta (la prima, en su caso, es elemento accidental). 2. Concesión de modo exclusivo. 3. Por plazo cierto. 4. Sin otra condición que el propio juicio del optante." SLG Irizarry v. SLG García, *supra*, pág. 722.

A su vez, el tratadista Puig Brutau ha expresado que "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 50. Cónsono con lo anterior, en el contrato de opción es el optante quien ostenta la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. Matos Lorenzo v. Rivera Tirado, 181 DPR 835, 841 (2011).

De otra parte, se ha reiterado que "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte". Zeta Enterprises, Inc. v. ELA, 145 DPR 1, 10 (1998). Por lo cual, hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones. *Íd*.

Ahora bien, si la opción se ejerce dentro del plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado. Mayagüez Hilton Corp. v. Betancourt, *supra*. Desde entonces, las partes vienen obligadas a satisfacer sus respectivas prestaciones bajo el contrato definitivo. Matos Lorenzo v. Rivera Tirado, *supra*, pág. 842. De este modo, el contrato de opción tiene una naturaleza transitoria y puede ser aplicable a un sinnúmero de contratos, tales como el de compraventa, sociedad, arrendamiento de cosas y de servicios. Mayagüez Hilton Corp. v. Betancourt, *supra*, en las págs. 246-247.

**III.**

Señalamos de antemano que decidimos adoptar por referencia todos los hechos determinados como incontrovertidos formulados por el foro apelado en la *Sentencia* recurrida. El foro primario emitió cincuenta y cinco (55) determinaciones de hechos sobre las cuales no existe controversia. Al aplicar el derecho vigente, con lo cual el TPI decretó que no existía una causa de acción reclamable, debemos evaluar si hay otros hechos materiales en controversia, que no permiten atender el asunto mediante el mecanismo de sentencia sumaria. Veamos.

Revisamos cautelosamente el expediente de apelación el cual incluye, el contrato de opción, las extensiones de términos al

contrato, estudios de títulos sobre las propiedades objeto del contrato, así como los documentos anejados a los escritos al tribunal y los argumentos de las partes. De estos, pudimos evaluar cada una de las determinaciones de hechos del TPI. No obstante, en esa evaluación encontramos que existen otros hechos en controversia que no permiten atender el caso a través del mecanismo de sentencia sumaria, como hizo el TPI.

Veamos los hechos en controversia que el TPI no encontró, pero sí surgen de los documentos en los autos y de otros hechos no controvertidos que no permiten resolver la controversia por sentencia sumaria.

Notamos que existe controversia sobre el detalle de la información que ambas partes dialogaron e intercambiaron en múltiples conversaciones telefónicas y mediante correos electrónicos.

La apelante BHC, LLC es una entidad jurídica que se compone de uno o más personas naturales y está en controversia que persona natural, parte de BHC, el cargo que ocupaba en esta y las facultades que el cargo le brindaba, fue la que habló con el Apelado en cada una de las conversaciones telefónicas que sostuvieron y la autoridad de ese representante o representantes de la entidad jurídica para lograr acuerdos en representación de BHC.

En particular es un hecho material en controversia el detalle de la conversación telefónica en que el apelado y un representante de BHC sostuvieron para BHC informar que cerrarían después de adquirir un seguro de título.

En su Primer Señalamiento de Error, BHC alegó que el matrimonio Velasco-García no fue diligente al no corregir los problemas registrales que tenían las propiedades objeto del

Contrato de Opción de Compraventa, dentro del término de vigencia del contrato y sus extensiones. Manifestó que la falta de diligencia de los apelados impedía la inscripción de la escritura de compraventa por incumplimientos con la Ley del Registro de la Propiedad. Consecuentemente, indicó que el TPI erró al imponerle honorarios de abogado por temeridad.

En cuanto al primer señalamiento de error, es importante que repasemos la cláusula duodécima del contrato, en la cual las partes estipularon que el matrimonio Velasco-García estaba obligado a entregar las propiedades opcionadas libre de cargas y gravámenes. El TPI resolvió que el matrimonio Velasco-García fue diligente e hizo las gestiones iniciales para librar las propiedades de los gravámenes que constaban en el Registro de la Propiedad, por lo que no había razón para que BHC pospusiera el cierre.

Existe una controversia sobre el alcance en particular que hizo el matrimonio Velasco-García para librar las propiedades de los gravámenes que constaban en el registro, durante el término que estuvo el contrato de opción vigente.

Además, está en controversia el tiempo que estuvo el contrato de opción vigente, pues luego de vencido el contrato, sin ser renovado, continuaron realizando actos jurídicos dirigidos a corregir o finalizar los asuntos que aún quedaban pendientes.

El Segundo Señalamiento de Error no será discutido aquí pues estamos determinando que hay múltiples controversias de hechos que no permiten resolver esta controversia por la vía sumaria y el TPI deberá celebrar un juicio y al celebrar el mismo deberá atender de nuevo si hubo temeridad o no.

BHC también arguyó, en un Tercer Señalamiento de Error, que el foro primario incidió al interpretar que el término de 30 días correspondientes al "due diligence", impuso a BHC la obligación

de tomar conocimiento de las constancias del Registro de la Propiedad y notificar las faltas y problemas registrales de las propiedades opcionadas. Además, en un cuarto señalamiento, planteó que el TPI erró al imponerle la obligación de poner las propiedades en condiciones de ser vendidas, a la parte apelante.

Reiteramos que a pesar de los planteamientos de error esbozados por BHC, el expediente de apelación demuestra hechos en controversia que surgen de conversaciones telefónicas entre las partes cuyo contenido es importante conocer para estar en condiciones de resolver si procedía que los apelados retuvieran los $25,000.00 que la apelante les entregó cuando suscribieron el contrato de opción. Los estudios de título de las propiedades, preparados por Professional Title Services y fechados el 20 de octubre de 2022, dan la impresión de que el matrimonio Velasco-García había presentado los documentos para la cancelación de dichos gravámenes desde el mes de agosto del 2022. Es decir, aparentemente los apelados habían realizado trámites diligentemente para cumplir con la cláusula duodécima del contrato de opción, y entregar las propiedades libres de cargas y gravámenes. De ello solo sabemos que, posteriormente, los gravámenes fueron cancelados con la mera presentación de una instancia al Registrador de la Propiedad.

Lo cierto es que BHC decidió retirarse del contrato el 1 de diciembre de 2022, mediante comunicación escrita en la que solicitó la devolución del depósito de $25,000.00. Arguyó que no se pudo realizar la compraventa por causas atribuibles a los apelados. La cláusula del contrato de opción suscrito entre las partes no contempla cambios verbales y la cancelación se requería por escrito y fundamentada. Pero surgen controversias, entre la que está, el tiempo que dicho contrato estuvo vigente, pues

ocurrieron unas conversaciones telefónicas cuando ya no había extensión firmada por ambas partes. La súbita cancelación, primero se expresó verbal y luego, se expone en un corto documento, pero esa decisión debía expresarse por escrito y fundamentada, según el contrato escrito. Pero, luego de una notificación verbal, surge el correo electrónico, que es el único documento en los autos que expresa por escrito la intención de cancelar. Dicho correo electrónico solo indica como razón para cancelar, causas atribuibles al vendedor, pero está en controversia el detalle de esas causas atribuibles al vendedor y si hubo alguna conversación que expusiera los fundamentos detallados para la decisión de cancelación por escrito del contrato.

La realidad del caso es que, a pesar de que la última extensión de término suscrita por las partes venció el 31 de octubre de 2022, las partes siguieron en comunicación directa con la intención de completar el cierre lo antes posible. De hecho, ocho (8) días antes de solicitar que se le devolviera el depósito, el 23 de noviembre de 2022, BHC expresó su interés en cerrar la compraventa tan pronto tuviese el visto bueno para asegurar las propiedades con una póliza de título. Está en controversia qué pasó, qué provocó que esa intención de otorgar la escritura de compraventa cambió 8 días más tarde. Está en controversia cómo y cuándo se entera BHC, que el matrimonio Velasco-García solicitó que se fijara una fecha final y firme para otorgar la escritura de compraventa. Está en controversia las circunstancias que provocaron a los apelados expresar que su obligación contractual se limitaba a entregar un título libre de cargas y gravámenes.

Para el 23 de noviembre de 2022, ambas partes estaban realizando gestiones para llevar a cabo la compraventa, hasta que BHC, súbitamente abandona las negociaciones y lo notifica

inicialmente por una llamada telefónica, cuyos detalles desconocemos. Por tanto, concluimos que, al momento de solicitar la devolución del depósito, no sabemos que realmente impedía que las partes ejecutaran la escritura de compraventa. La compraventa no se llevó a cabo porque BHC así lo decidió, pero no se conoce que provocó esa decisión. De acuerdo con la cláusula quinta del contrato, el matrimonio Velasco-García tenía un derecho a retener los $25,000.00 depositados por BHC, como compensación por haber retirado las propiedades del mercado durante el tiempo que lo hizo. Para decidir si esa es una determinación correcta o no, faltan muchas preguntas por contestar, que solo se logran contestar al escuchar testigos de ambas partes. Ello solo se hace mediante un juicio.

En cuanto al tercer y cuarto señalamiento de error, nos limitaremos a expresar que el TPI no actuó conforme a derecho al interpretar que BHC tenía la obligación de tomar conocimiento de las constancias del Registro y de notificar las faltas a los co apelados dentro del término estipulado de "due diligence". La cláusula segunda del contrato estableció que, tanto BHC como el matrimonio Velasco-García, tenían la obligación de cooperar y obtener los documentos necesarios para efectuar el cierre de la compraventa. No hay duda de que era la obligación de los apelados entregar las propiedades libres de cargas y gravámenes. Interpretar de quién es la responsabilidad de tomar conocimiento de las constancias del Registro, sin escuchar prueba, es una interpretación errada y no permite la correcta evaluación de los términos en el contrato de opción.

El pleito instado por BHC está sujeto a que el tribunal resuelva varias controversias, luego de dirimir la credibilidad de los testimonios en un juicio plenario y solo así podrá hacer

determinaciones de hechos que aún están en controversia y solo atendiendo correctamente esas controversias, podrá aplicar el derecho vigente y resolver.

A tenor con lo antes expuesto, resolvemos que no se puede dirimir esta controversia por la vía sumaria y procede revocar la sentencia apelada lo que incluye dejar sin efecto la imposición de honorarios de abogado por temeridad a BHC.

## IV.

Por los fundamentos antes expuestos, Revocamos la *Sentencia* apelada, a los fines de que el TPI celebre un juicio plenario para dirimir las controversias aquí planteadas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Domínguez Irizarry concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones