ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ELIAM J. FERNÁNDEZ HUERTAS Y OTRO<br><br>Apelantes<br><br>v.<br><br>PUERTO RICO PACKERS, INC. Y OTROS<br><br>Apelados | KLAN202500152 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F AC2015-2766<br><br>Sobre:<br>Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de mayo de 2025.

Comparecen el señor Eliam Fernández Huertas (señor Fernández Huertas) y el señor Héctor Fernández López (señor Fernández López), en conjunto los apelantes. Nos solicitan la revocación de la *Sentencia Sumaria enmendada*, emitida el 22 de enero de 2025 y notificada el 31 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). En el aludido dictamen, el TPI desestimó la reclamación de los apelantes y declaró Ha Lugar la reconvención interpuesta por la parte demandada/aquí apelada.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 31 de agosto de 2015, los apelantes presentaron una demanda sobre incumplimiento de contrato contra Puerto Rico Packers, Inc. (PR Packers) y el señor Alcides Algarín Santiago (señor Algarín Santiago), en conjunto los apelados.[1] En esencia, alegaron que el 2 de mayo de 2001 el señor Fernández López y el señor Algarín

---

[1] Véase, Apéndice de los Apelantes, págs. 1-5.

Santiago pactaron un contrato de compraventa de un solar ubicado en Loíza, Puerto Rico. El mismo se pagaría a plazos mediante el pago mensual de $750.00 correspondiente al precio de venta y un pago mensual de $540.00 correspondiente a la renta, hasta que se saldara el precio de venta. Lo anterior responde a que el señor Fernández López no contaba con los fondos necesarios para pagar la totalidad del precio pactado.

Los apelantes alegaron que el 31 de enero de 2012, el señor Algarín Santiago llevó al señor Fernández López con un abogado para firmar un nuevo contrato sobre arrendamiento. Alegaron que el señor Fernández López firmó el contrato porque el señor Algarín Santiago lo amedrentó e intimidó con un revolver que cargaba en su cinto. Alegaron los apelantes que el señor Fernández López temió por su vida y la de su hijo por lo que, firmó el contrato de arrendamiento aun cuando contradecía el contrato de compraventa. Que dicho contrato no reflejó el acuerdo pactado entre las partes sobre compraventa mediante precio aplazado, ya que el nuevo contrato era uno disimulado. Arguyeron, además, que cumplieron con el contrato anterior mediante el abono de varios años de las mensualidades antes mencionadas. Alegaron, inclusive, que mediante el contrato de alquiler descubrieron que PR Packers era la dueña del solar y no el señor Algarín Santiago.

Eventualmente, el señor Fernández López le cedió sus derechos a su hijo, el señor Fernández Huertas y este continuó con el pago de la renta. Que el contrato se renovó automáticamente a través de los años, hasta que los pagos ascendieron a $139,020, excediendo el precio de venta acordado. Tiempo después, el señor Fernández Huertas trató de buscar un financiamiento para finiquitar el balance del precio de venta pactado entre las partes. Alegan los apelantes que cuando el señor Algarín Santiago les hizo entrega de las escrituras del solar, estas revelaron que el solar estaba gravado con varias hipotecas

constituidas por PR Packers, cuyas sumas principales ascendían a los $255,000 y que dichos gravámenes excedían el valor de la propiedad.

Por todo lo anterior, los apelantes iniciaron el pleito de epígrafe alegando que los apelados incurrieron en fraude al gravar el solar a sabiendas de que los apelantes pagaron el precio de la compraventa por años. Alegaron que las actuaciones fraudulentas, negligentes, dolosas, amenazantes y violentas de los apelados le ocasionaron angustias, al igual que daños económicos. Por todo esto, los apelantes le solicitaron al TPI los declarara titulares y dueños del solar ubicado en Loíza, Puerto Rico. Solicitaron, además, que los apelados traspasaran la propiedad libre de gravámenes, más una compensación por los daños, la imposición de costas y honorarios de abogados.

El 27 de enero de 2016, PR Packers compareció mediante *Contestación a Demanda y Reconvención*.[2] En apretada síntesis, aseveró que en efecto, las partes pactaron un contrato de alquiler con opción a compraventa el 2 de mayo de 2001. Que en dicho contrato se estableció el precio de venta ascendente a $135,000.00 si los apelantes decidían ejercer la opción de compraventa y que estos tendrían un plazo de 5 años para ejercer la opción, vencedero al 30 de abril de 2006, con una prórroga de 5 años adicionales a discreción de cualquier de las partes. Por otro lado, PR Packers negó haber pactado el pago aplazado con los apelantes ya que del propio contrato surgía que el canon de arrendamiento ascendía a $1,290. Aseveró que la cantidad de $750 mensuales solo se aplicaría si los apelantes ejercían la opción de compraventa. Sostuvo que el 31 de enero de 2012 el señor Algarín Santiago y el señor Fernández López suscribieron un contrato de arrendamiento que suprimió cualquier

---

[2] Véase, Apéndice de los Apelantes, págs. 8-14.

otro contrato previo. Además, aseguró que el señor Fernández López nunca le notificó la cesión de su derecho sobre el solar.

Por todo esto, PR Packers solicitó la desestimación de la demanda y presentó una reconvención. En su reconvención, PR Packers alegó que el señor Fernández López incumplió con el contrato de alquiler con opción a compra del 2 de mayo de 2001. Que debido a dicho incumplimiento y con el aval del señor Fernández López, las partes otorgaron el contrato de arrendamiento del 31 de enero de 2012. PR Packers aseveró que dicho contrato era exclusivamente de arrendamiento y que el mismo tenía el efecto de resolver o suprimir otro contrato verbal y/o suscrito entre las partes. PR Packers alegó que, al momento de la radicación de la demanda en su contra, el señor Fernández López le adeudaba 3 meses de renta y que dicha deuda estaba vencida, líquida y exigible. Igualmente, alegó que los apelados realizaron expresiones, difamatorias, calumniosas y de injuria grave en su contra. Que dichas expresiones afectaron la buena reputación del señor Algarín Santiago y el de su empresa. Ante este cuadro, PR Packers solicitó la desestimación de la demanda en su contra y que se declarara Ha Lugar su reconvención y que se ordenara el desahucio de los apelantes, el pago por concepto de cánones de arrendamiento adeudados, junto a una compensación por los daños y perjuicios que ocasionaron las expresiones de los apelantes.

El 28 de enero de 2016, PR Packers presentó *Moción Solicitando Desestimación por Falta de Parte Indispensable*.[3] En apretada síntesis, PR Packers arguyó que los apelantes no incluyeron a la señora Iris Marrero Piñeiro (señora Marrero Piñeiro), esposa del señor Fernández López y también parte contratante en el contrato del 2 de mayo de 2001. PR Packers razonó que la señora Marrero Piñeiro era parte indispensable en el pleito ya que las alegaciones contenidas en la

---

[3] Véase, Apéndice de los Apelantes, págs. 15-16.

*Demanda* surgen del contrato de alquiler con opción a compraventa y sin la comparecencia de esta, el TPI se vería imposibilitado de adjudicar la controversia.

El 7 de marzo de 2019, el señor Algarín Santiago compareció mediante *Contestación a Demanda.*[4] En esencia, arguyó que el señor Fernández Huertas no tenía legitimación activa para permanecer en el pleito como demandante. Esto es, alegó que no existía evidencia de que el señor Fernández Huertas contrajo obligación alguna con el señor Algarín Santiago en los negocios jurídicos del 2 de mayo de 2001 y del 31 de enero de 2012. Alegó, además, que los términos del contrato del 31 de enero de 2012 fueron claros y no dejaron duda alguna sobre la intención de los contratantes. Razonó el señor Algarín Santiago que el señor Fernández López firmó el contrato de alquiler de forma libre y voluntaria. Al igual que PR Packers, el señor Algarín Santiago alegó que la señora Marrero Piñeiro era parte indispensable en el pleito. Finalmente, negó haberles causado daños y angustias mentales a los apelantes.

Luego de varios trámites procesales, el TPI celebró una videoconferencia sobre estados de los procedimientos el 31 de julio de 2020.[5] Mediante esta, el foro primario le concedió a la representante legal de los apelantes un término de 45 días perentorios para enmendar la demanda con el único fin de incluir a la señora Marrero Piñeiro en el pleito como parte demandante o parte demandada. Así las cosas, el 26 de agosto de 2020, los apelantes presentaron Demanda Enmendada donde incluyeron a la señora Marrero Piñeiro en el pleito.

Tras varios trámites, PR Packers presentó una *Moción de Sentencia* Sumaria el 10 de marzo de 2022, a la cual se unió el señor

---

[4] Véase, Apéndice de los Apelantes, págs. 34-39.
[5] Véase, Apéndice de los Apelantes, págs. 42-43.

Algarín Santiago.[6] El TPI les concedió un término a los apelantes para presentar su oposición y así lo hicieron el 13 de abril de 2022.[7]

Así las cosas y luego de varios trámites procesales innecesarios pormenorizar, el TPI emitió su Sentencia Sumaria el 27 de junio de 2024, enmendada *nunc pro tunc* el 3 de septiembre de 2024 y enmendada el 22 de enero de 2025. Fue en la última sentencia enmendada que el TPI realizó las siguientes determinaciones de hechos:

1. El 8 de mayo de 2001, el Sr. Héctor Fernández López y su esposa la Sra. Iris Marrero Piñeiro y la Puerto Rico Packers, Inc. suscribieron un contrato privado de alquiler con opción a compraventa, ante el notario público José R. Martínez Ramos.

2. En la firma del contrato la Puerto Rico Packers, Inc. estuvo representada por su presidente el Sr. Alcides Algarín Santiago.

3. La propiedad arrendada en el contrato de alquiler y opción de compraventa, la cual es objeto de controversia en el caso de autos es la finca: URBANA: Predio de terreno en el Barrio Hato Puerco, del término municipal de Loíza, Puerto Rico con cabida de CERO PUNTO SEIS MIL OCHENTA Y TRES (0.6083) CUERDAS. En li[n]des por el Norte, con el lote número Uno (1), que es una faja de terreno dedicada a uso público que la separa de la carretera número Ciento Ochenta y Cinco (185), conocida como carretera Hato Puerco; por el Sur con los terrenos de Armando Torres, hoy su Sucesión; por el Este, con una quebrada que lo separa del lote número cinco (5); y por el Oeste, con remanente de la finca principal. Inscrita al folio Ciento Siete (107) del tomo Noventa y Cinco (95), finca número Cinco Mil Ciento Cincuenta (5,150), en el Registro de la Propiedad de Puerto Rico, Sección Tercera de Carolina.

4. El contrato de alquiler y opción de compraventa suscrito entre las partes tenía una fecha de vencimiento al 30 de abril de 2006, según surge del propio documento.

5. El término del contrato [de] alquiler y opción de compraventa era de cinco (5) años, prorrogable a cinco (5) años adicionales según surge del propio contrato suscrito entre las partes.

6. El canon de arrendamiento establecido en el contrato de alquiler y opción de compraventa era de $1,290.00 mensuales a realizarse dentro de los primeros diez (10) días de cada mes según surge del propio contrato suscrito entre las partes.

7. El contrato de alquiler y opción de compraventa estableció que, en caso de ejercerse la opción de

---

[6] Véase, Apéndice de los Apelantes, págs. 82-259.
[7] Véase, Apéndice de los Apelantes, págs. 261-289.

compraventa, entonces se le aplicaría al precio de la compraventa la cantidad de $750.00 mensuales, provenientes del canon de arrendamiento pagado.

8. El contrato de alquiler y opción de compraventa suscrito estableció que, de no ejercitarse la opción de compraventa según pactada, los cánones de arrendamiento pagados no tendrían carácter devolutivo.

9. El precio de venta convenido en el contrato de alquiler y opción de compraventa por la propiedad fue de $135,000.00.

10. En el contrato de alquiler y opción de compraventa la Puerto Rico Packers, Inc. no se obligó a proveer servicios esenciales de agua, energía eléctrica, teléfono y cualesquiera otro para el uso de la propiedad.

11. El contrato de alquiler y opción de compraventa estableció que de incumplirse con el pago del canon de arrendamiento durante dos (2) meses o más, ello daría libertad a Puerto Rico Packers, Inc. de decretar en incumplimiento al Sr. Héctor Fernández López e Iris Marrero Piñeiro.

12. Para el 2006, Héctor Fernández López e Iris Marrero Piñeiro incumplieron el contrato de alquiler y opción de compraventa al cederle el uso de la propiedad al codemandante Eliam Jesús Fernández Huertas sin haberlo notificado a Puerto Rico Packers, Inc.

13. El Sr. Héctor Fernández López e Iris Marrero Piñeiro incumplieron su obligación pactada en el contrato de alquiler y opción de compraventa al dejar de pagar los cánones mensuales de arrendamiento por un periodo mayor de dos (2) meses.

14. El Sr. Héctor Fernández López e Iris Marrero Piñeiro incumplieron el pago del canon de alquiler durante diciembre de 2008, enero de 2009 y febrero de 2009.

15. Al momento del incumplimiento por falta de pago habían transcurrido, entre el 8 de mayo de 2001 y diciembre de 2008, 7 años, 7 meses, 3 semanas y 2 días.

16. Para que Héctor Fernández López e Iris Marrero Piñeiro ejercieran la opción de compraventa tenían que notificar por escrito a Puerto Rico Packers Inc. su decisión de ejercitarla. A la fecha de diciembre del 2008, el Sr. Héctor Fernández López e Iris Marrero Piñeiro no habían ejercido la opción de compraventa sobre la propiedad.

17. Conforme con la cláusula decimoquinta del contrato de alquiler y opción de compraventa, Héctor Fernández López e Iris Marrero Piñeiro eran los únicos que podían ocupar la propiedad, salvo que Puerto Rico Packers, Inc. lo autorizara.

18. El 7 de abril de 2010, el Sr. Héctor Fernández López suscribió un contrato de arrendamiento con Marilyn I. Padilla Colón, cediéndole en calidad de arrendamiento la propiedad objeto de esta demanda, incumpliendo de esa forma con el Contrato original al subarrendar a un tercero.

19. Para efectuar el arrendamiento de la propiedad objeto de esta demanda a un tercero, el Sr. Héctor Fernández

López no obtuvo la autorización de la demandada Puerto Rico Packers, Inc.

20. Al momento en que Héctor Fernández López subarrendó la propiedad a Marilyn I. Padilla Colón el 7 de abril de 2010, habían transcurrido 8 años, 10 meses, 4 semanas y 2 días desde que este suscribió el contrato de alquiler y opción de compraventa el 8 de mayo de 2001.

21. El contrato de alquiler y opción de compraventa suscrito el 8 de mayo de 2001, le requería a Héctor Fernández López e Iris Marrero Piñeiro notificar por escrito a Puerto Rico Packers, Inc. que ejercitarían la opción de compraventa.

22. Al 7 de abril de 2010 el Sr. Héctor Fernández López e Iris Marrero Piñeiro no habían ejercido la opción de compraventa sobre la propiedad. Es un hecho incontrovertido que el Sr. Héctor Fernández López e Iris Marrero Piñeiro nunca notificaron por escrito que ejercitarían la opción de compraventa establecida en el contrato suscrito el 8 de mayo de 2001.

23. Ante los incumplimientos de Héctor Fernández López y de Iris Marrero Piñeiro, Puerto Rico Packers, Inc. decretó el incumplimiento del contrato de alquiler y opción de compraventa por parte de Héctor Fernández López e Iris Marrero Piñeiro.

24. El 31 de enero de 2012, Héctor Fernández López y Alcides Algarín Santiago suscribieron un nuevo contrato de arrendamiento, el cual excluyó la opción de compraventa del inmueble.

25. El contrato de arrendamiento fue suscrito ante la notaria Gema González Rodríguez, su vigencia era por el término de 6 años contando a partir del 11 de enero de 2010 al 11 de enero de 2018 y estableció un canon de arrendamiento mensual de $800.00.

26. En el contrato de arrendamiento suscrito el 31 de enero de 2012, en la cláusula 14 del mismo, se pactó que en caso de reclamación por cobro de cánones de arrendamiento en atraso y/o por un procedimiento de desahucio, los gastos, costas y honorarios de abogados serán pagados por el arrendatario imponiéndose una suma mínima de $1,000.00 o el 10% de la deuda, lo que fuese mayor.

27. El contrato de arrendamiento suscrito el 31 de enero de 2012 resolvió en la cláusula 19 del mismo, cualquier otro contrato previo, ya fuera verbal y/o escrito, que hubiera sido suscrito entre las partes.

28. En el contrato de arrendamiento suscrito el 31 de enero de 2012, en la cláusula 19 de este las partes acordaron que en lo sucesivo el mismo era el que iba a ser la ley entre las partes firmantes e iba a entrar en vigor desde ese momento en adelante.

29. El Sr. Alcides Algarín Santiago, como presidente de Puerto Rico Packers, Inc. no intimidó o amedrentó con un revólver a Héctor Fernández López.

30. El codemandante Eliam Jesús Fernández Huertas no fue ni es parte de ninguno de los contratos suscritos entre

Puerto Rico Packers, Inc. y Héctor Fernández López e Iris Marrero Piñeiro.

31. Eliam Jesús Fernández Huertas estuvo interesado en comprar la propiedad, pero ese negocio nunca se concretó.

32. Eliam Jesús Fernández Huertas, como no pudo concretar la compraventa que le exigió a Alcides Algarín Santiago, decidió demandar el 31 de agosto de 2015.

33. En la firma de contrato del 8 de mayo del 2001 el Sr. Algarín compareció como presidente de Puerto Rico Packers, Inc.

34. En la firma del contrato del 2012 el Sr Algarín compareció sin hacer mención de Puerto Rico Packers, Inc.

35. Conforme a la prueba presentada el Sr. Héctor Fernández López e Iris Marrero Piñeiro y/o Eliam Jesús Fernández Huertas pagaron un total de $83,730.00 en cánones de arrendamiento entre el 8 de mayo de 2011 y el 18 de agosto de 2014.

36. La Sra. Iris Marrero Piñeiro se divorció del demandante Sr. Fernández López el 30 de mayo desde 1997.

37. La parte demandante no incluyó reclamación alguna en contra de la codemandada Iris Marrero Piñeiro en la demanda original ni en la demanda enmendada. (Énfasis en el original suprimido).

El TPI declaró Con Lugar la *Moción de Sentencia Sumaria* presentada por los apelados. Razonó el TPI que, contrario a los apelados, los apelantes no presentaron evidencia admisible que sustentara su oposición. Por otro lado, el foro primario señaló que de los contratos habidos entre el señor Fernández López y PR Packers surgía un lenguaje claro y preciso del cual no surgían controversias sobre la interpretación de las cláusulas contractuales. Además, el TPI determinó que de la prueba presentada por los apelados surgía que el señor Fernández López incumplió con los cánones de arrendamiento y que no ejercitó la opción de compraventa. El foro de instancia determinó, también, que el contrato del 31 de enero de 2012 expresamente dejó sin efecto el contrato del 2 de mayo de 2001 y que el nuevo contrato era solamente de arrendamiento.

Por otro lado, el TPI señaló que los apelantes tuvieron desde el 2015 hasta el 2022 para completar su descubrimiento de prueba. Señaló, además, que durante una vista celebrada el 6 de marzo de

2020, el TPI señaló Conferencia con Antelación al Juicio para el 13 de mayo de 2020. Entiéndase, dos años antes de presentarse la *Moción de Sentencia Sumaria* de los apelados. Consecuentemente, el foro primario desestimó con perjuicio la demanda incoada por los apelantes y a su vez, los condenó a pagar los cánones de arrendamiento adeudados ascendentes a $70,400 más los intereses legales equivalentes a $3,520 anuales, aumentando a razón de $9.64 por día hasta que se salde la sentencia. De igual forma, el TPI ordenó el desalojo inmediato de la propiedad perteneciente a PR Packers. Finalmente, el foro primario les impuso a los apelantes el pago de $7,040 por concepto de honorarios, equivalentes al 10% de la deuda.

Inconformes, los apelantes presentaron una *Moción de Reconsideración de Sentencia Sumaria* el 23 de septiembre de 2024.[8] La misma fue denegada el 22 de enero de 2025. Insatisfechos aun, los apelantes acuden a este foro y nos plantean la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al disponer de las reclamaciones mediante la vía sumaria mediante una interpretación literal de los contratos, que violó el debido proceso de ley de la parte demandante, sin que hubiera concluido el descubrimiento de prueba, sin evaluar la conducta de las partes durante la vida de los contratos; y, sin resolver las controversias conforme ordena la doctrina.

Los apelados comparecieron mediante escrito en oposición. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. La norma procesal permite a los tribunales disponer parcial o totalmente de litigios civiles. *León Torres v. Rivera Lebrón,* 204 DPR 20, 51 (2020).

---

[8] Véase, Apéndice de los Apelantes, págs. 388-409.

De esta manera, se aligera la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2021). En ese sentido, un hecho material "es aquél que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Para ello, el tribunal debe escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen o no hechos en controversia que deban esclarecerse mediante un juicio. *León Torres v. Rivera Lebrón, supra,* pág. 42.

La sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot, supra,* pág. 699 y los casos allí citados. Por ser éste un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000); *León Torres v. Rivera Lebrón, supra,* pág. 44. Siendo así, sólo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede

prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133 (1992).

Por su parte, la Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3, establece ciertos requisitos de forma en extremo detallados con los que debe cumplir una solicitud de sentencia sumaria, al igual que su oposición. *León Torres v. Rivera Lebrón, supra,* pág. 43. Conforme con ello, la parte promovida no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Por el contrario, está obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. *Id.* (Citas omitidas).

En cuanto a la revisión *de novo* de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Este tribunal deberá, además, realizar un examen dual que consiste, primero, en analizar los documentos que acompañan la

solicitud de sentencia sumaria y en la oposición, así como aquellos que obren en el expediente del tribunal; y segundo, determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Una vez realizado este análisis el tribunal no dictará sentencia sumaria si: existen hechos materiales controvertidos; hay alegaciones en la demanda que no han sido refutadas; surge de los documentos que se acompañan con la moción una controversia real sobre algún hecho esencial; o como cuestión de derecho no procede. *Id.*, págs. 333-334.

**B.**

Es norma conocida que, bajo la teoría general de obligaciones y contratos,[9] las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral, ni al orden público". *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018); Art. 1207 del Cód. Civ. 1930, 31 LPRA ant. sec. 3372. Un contrato existe cuando una o varias partes prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio. *Id.*, págs. 726-727; Art. 1206 del Cód. Civ. de 1930, 31 LPRA ant. sec. 3371. El pacto será validado si concurren tres elementos esenciales, a saber: consentimiento, objeto y causa. *Id.*, pág. 727 y la jurisprudencia allí citada; Art. 1213 del Cód. Civ. de 1930, 31 LPRA ant. sec. 3391.

Como se sabe, las obligaciones nacen de la ley, los contratos, los cuasicontratos y los actos y omisiones en que intervengan la culpa o negligencia. *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 726

---

[9] En consideración a que la obligación objeto de controversia se perfeccionó bajo la vigencia del Código Civil de 1930, aplicaremos dicho cuerpo normativo y su jurisprudencia interpretativa al asunto planteado. Ello así, en armonía con el Artículo 1812 del Código Civil de 2020, *Actos y contratos celebrados bajo legislación anterior*, 31 LPRA sec. 11717, que dispone: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código".

(2018); Art. 1042 del Cód. Civ. de 1930, 31 LPRA ant. sec. 2992. "Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Art. 1044 del Cód. Civ. de 1930, 31 LPRA ant. sec. 2994. Este principio de *pacta sunt servanda* impone a las partes contratantes la exigencia de cumplir con lo pactado pues supone la inalterabilidad de los acuerdos contenidos en el contrato. *Rodríguez García v. UCA, supra,* pág. 943.

Claro está, existen contratos que exigen la realización de un ejercicio de interpretación a los fines de determinar la naturaleza de la obligación en que incurrieron las partes. *Nissen Holland v. Genthaller,* 172 DPR 503, 513 (2007); *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 725-726 (2001). A tales efectos, el Artículo 1233 del Código Civil de 1930 disponía que: "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas". 31 LPRA ant. sec. 3471. Al respecto, el Tribunal Supremo de Puerto Rico ha opinado que debe seguirse la letra clara de un contrato, cuando la misma refleja inequívocamente la voluntad de las partes. Por lo tanto, dicho principio impone a los tribunales que la interpretación conferida a un contrato no le reste efectividad a las cláusulas contractuales que fueron válidamente acordadas. Sin embargo, cuando no sea posible determinar la voluntad de las partes con la mera lectura literal de las cláusulas contractuales, entonces, se deberá recurrir a evidencia extrínseca para juzgarla, utilizando principalmente los actos anteriores, coetáneos y posteriores de los contratantes, el uso o costumbre y demás circunstancias indicativas de la intención contractual, incluyendo la ocasión, circunstancias, personas y el acuerdo que se intentó llevar a cabo. *Nissen Holland v. Genthaller, supra,* págs. 518-519.

## c.

El contrato de arrendamiento puede ser de cosas, de obras o de servicios. Art. 1432 del Cód. Civ. de 1930, 31 LPRA ant. sec. 4011; *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 797 (2023). Con relación al arrendamiento de cosas, el mismo consiste en que una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. Art. 1433 del Cód. Civ. de 1930, 31 LPRA ant. sec. 4012. Conforme a ello, cuando un contrato de arrendamiento se pacta por tiempo determinado, concluye en la fecha prefijada sin que sea necesario requerirlo. Art. 1455 del Cód. Civ. de 1930, 31 LPRA ant. sec. 4062. Esto, con excepción a los casos en que opera la táctica reconducción. Art. 1456 del Cód. Civ. de 1930, 31 LPRA ant. sec. 4063.

De otra parte, el contrato de opción es el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal.[10] *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 724 (2008); *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002); *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 583 (1989). De este contrato nace un derecho que confiere al optante la facultad de decidir si se celebra el contrato por el que se opta o no. P.*D.C.M. Assoc. v. Najul Bez, supra*, pág. 724; *Mayagüez Hilton Corp. v. Betancourt, supra.* En ese sentido, el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante. *P.D.C.M. Assoc. v. Najul Bez, supra*, págs. 724-725; *Mayagüez Hilton Corp. v. Betancourt, supra*, pág. 250. Por su

---

[10] El Código Civil de 2020 regula el derecho de opción; véase, Artículos 1029-1032, 31 LPRA secs. 8821-8824.

naturaleza transitoria, el contrato de opción puede ser principal o un pacto accesorio; y es aplicable a un sinnúmero de contratos, entre estos, los de compraventa, sociedad, financiamiento, arrendamiento de cosas y de servicios. *Mayagüez Hilton Corp. v. Betancourt, supra,* pág. 246; *Atocha Thom McAn, Inc. v. Registrador, supra.*

**III.**

El señor Fernández López y el señor Fernández Huertas acuden ante nos y solicitan la revocación de la *Sentencia Sumaria* emitida el 22 de enero de 2025. Los apelantes plantean la comisión de un único error que podemos diseminar en dos asuntos: primero, el TPI interpretó de manera literal los contratos en controversia; segundo, el TPI violó el debido proceso de ley al desestimar la demanda sin que hubiera concluido el descubrimiento de prueba.

Por mandato reglamentario y jurisprudencial, revisamos *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la moción, entiéndase, los apelantes. De este modo, cotejamos si existen hechos materiales en controversia y si el TPI aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas, supra.* Luego de nuestra revisión, nos encontramos en posición de confirmar la determinación del TPI. Nos explicamos.

Surge del *Contrato de Alquiler con Opción a Compraventa* del 2 de mayo de 2001 que de una parte comparece PR Packers representada por su presidente, el señor Algarín Santiago denominado El Vendedor. Surge también que de la otra parte comparecen el señor Fernández López y la señora Marrero Piñeiro, denominados Los Compradores.[11] En su segunda cláusula, el contrato dispone que:

> El Vendedor le concede a el Comprador el presente contrato de alquiler con una opción exclusiva de compraventa de la propiedad descrita en la Cláusula Primera y el Comprador acepta dicha opción por un término de cinco (5) años a partir del 1ero de mayo de

---

[11] Véase, Apéndice de los Apelantes, pág. 102.

2001 a vencer el 30 de abril de 2006. Este alquiler y opción de compraventa será prorrogado por términos de cinco (5) años a discreción de cualesquiera de las partes. Hacen constar las partes específicamente que el Comprador tendrá la opción de prorrogar dicho término por los cinco (5) años adicionales, siendo suficiente una notificación al Vendedor de su intención. Si el Comprador por las razones que fuera no notifica al Vendedor de su intención de continuar con el presente contrato, el mismo se entenderá renovado por el término de cinco (5) años adicionales y bajo las mismas condiciones y cláusulas aquí establecidas.[12]

Por otro lado, en la Cuarta cláusula las partes contratantes establecieron que los Compradores pagarían un canon mensual de $1,290 en los primeros 10 días de cada mes. Por su parte, la Cláusula Quinta dispone que:

[…], solo en caso de que éste [el Comprador] ejerza la opción de compraventa que aquí se le está concediendo, se le aplicará al precio de compraventa de la propiedad la cantidad de **Setecientos Cincuenta Dólares ($750.00)** mensuales una vez se ejercite la opción. Solo dicha suma acumulada será abonada al precio de compraventa, pero quedará el Vendedor con el cien por ciento (100%) de la misma y no tendrá carácter devolutivo en caso de que el comprador no ejercite la opción dentro del término concedido y/o cualesquier extensión posterior. El restante del pago mensual, o sea $540.00, se aplicará en concepto de intereses mensuales. [Énfasis en el original].[13]

Mientras que la Cláusula Decimotercera dispone lo siguiente sobre el incumplimiento del contrato:

Acuerdan las partes que el incumplimiento al pago y/o canon de arrendamiento aquí pautado, durante el término de dos (2) meses o más, por la cantidad de Dos Mil Quinientos Ochenta Dólares ($2,580.00), dará la libertad al Vendedor de declarar en incumplimiento al Comprador pudiendo recurrir a los mecanismos legales correspondientes para ordenar el desalojo de la propiedad y/o el cumplimiento específico de la opción a su entera discreción.[14]

Por su parte, surge del *Contrato de Arrendamiento* del 31 de enero de 2012 que comparecieron el señor Algarín Santiago en calidad de Arrendador, mientras que el señor Fernández López compareció en calidad de Arrendatario. En la Cláusula Dieciocho las partes pactaron

---

[12] *Íd.*
[13] Véase, Apéndice de los apelantes, pág. 103.
[14] Véase, Apéndice de los Apelantes, pág. 104.

que el contrato se consideraría violado o incumplido por el Arrendatario si, entre otros eventos, este faltaba o incumplía con cualesquiera de los términos, condiciones o compromisos contraídos en dicho contrato.[15] Dispone la Cláusula Dieciocho, además, que el Arrendador podría dar por terminado el contrato en la eventualidad de que ocurrieran cualesquiera de los eventos listados.[16] De otro lado, la Cláusula Diecinueve dispone que el *Contrato de Arrendamiento* "tiene el efecto de resolver o suprimir cualquier contrato verbal y/o escrito suscrito por las partes anteriormente, reduciéndose al escrito ahora suscrito y el cual entrará en vigor y será la ley entre las partes aquí firmantes, de ahora en adelante".[17]

Luego de leer con detenimiento ambos contratos, coincidimos con la apreciación del TPI. Las cláusulas de ambos contratos son claras y no dan margen a ambigüedad. De manera que, el TPI no erró al negarse descubrir la intención de las partes. Surge inequívocamente de ambos contratos las intenciones de las partes. Recordemos que los tribunales venimos obligados a determinar la intención de las partes cuando con la mera lectura literal de las cláusulas contractuales no sea posible determinar la voluntad de las partes. *Nissen Holland v. Genthaller, supra.* Solo así, los tribunales se ven llamados a recurrir a evidencia extrínseca para juzgarla, utilizando principalmente los actos anteriores, coetáneos y posteriores de los contratantes, el uso o costumbre y demás circunstancias indicativas de la intención contractual, incluyendo la ocasión, circunstancias, personas y el acuerdo que se intentó llevar a cabo. *Íd.*

Es evidente cuál era la voluntad de las partes en ambos contratos. Surge del expediente que el señor Fernández López

---

[15] Véase, Apéndice de los Apelantes, pág. 185.
[16] *Íd.*
[17] Véase, Apéndice de los Apelantes, pág. 186.

incumplió con *Contrato de Alquiler con Opción a Compraventa.* Que a raíz de dicho incumplimiento, las partes otorgaron el *Contrato de Arrendamiento* que tuvo el efecto de resolver o suprimir cualquier otro contrato habido entre las partes.

Debemos resaltar que el 22 de octubre de 2019, la representante legal de los apelados depuso al señor Fernández López y al señor Fernández Huertas. A preguntas de la representante legal de los apelados, el señor Fernández López aseveró que firmó el *Contrato de Arrendamiento* sin leerlo porque se encontraba molesto.[18] De igual forma, aseveró que el señor Algarín Santiago no le apuntó con un revolver y que tampoco se sacó un revolver del bolsillo ni de la cintura.[19]

Ante este cuadro, nos es forzoso concluir que el *Contrato de Arrendamiento* no fue simulado y que el señor Fernández López lo firmó de manera libre y voluntaria, sin coerción alguna. Aun cuando lo hizo sin leer el mismo. Así las cosas, nos vemos en la obligación de confirmar el dictamen apelado.

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Véase, Apéndice de los Apelantes, pág. 143.
[19] Véase, Apéndice de los Apelantes, págs. 144-146.